EXHIBIT B

BEFORE THE STATE OF ALABAMA
BOARD OF EDUCATION

| | |
|---|---|
| **GADDIES HILL,** | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No.. 04-92 |
| **ELMORE COUNTY BOARD OF EDUCATION,** | ) ) ) ) |
| Respondent. | ) ) |

## ORDER

This matter having come upon pre-hearing conferences with the attorneys for the parties and the special education coordinator for the school system and as well as documented agreements between the parties which are attached as exhibits to this Order and incorporated by reference herein and the same having been considered it is

**ORDERED** that the school system shall provide Petitioner with the following:

(a)   a transition assessment;

(b)   functional daily life skills needed for the Petitioner;

(c)   employment development skills needed for the Petitioner;

(d)   such other services as recommended by Petitioner's expert, Dr. Karen Rabren in a letter to the school system's attorney dated December 10, 2004.

1.   It was acknowledged by the school system that it failed to comply with the previous due process hearing decision dated April 1, 2003. For that reason the parties agreed to employ the services of an expert to develop a functional life skills program for the Petitioner as previously ordered by the due process Hearing Officer and/or to otherwise develop a curriculum that would meet the educational needs of Petitioner, including related

services. That the individual selected by the parties was Dr. Karen Rabren whose recommendations for Petitioner and other students are attached hereto as Exhibit "A". That the school system agrees to comply with the recommendations of Dr. Karen Rabren as documented in a letter from the Elmore County Board of Education attorney to Petitioner's attorney dated January 21, 2005 which letter is attached hereto as Exhibit "B".

2. That it is recognized by this Order that the school system is not agreeing to implement Dr. Rabren's recommendations with respect to any student attending the Elmore County public schools other than the Petitioner.

3. That it is further **ORDERED** that the school system shall implement the recommendations of Dr. Rabren with respect to Petitioner. Petitioner shall be provided a transition assessment. Dr. Rabren shall be utilized in evaluating the information contained in the assessment and in developing program goals for the Petitioner. The school system shall identify experiences, locations, activities and job development sites in the community and shall continue to do so with the assistance of Dr. Rabren.

4. That upon completion of the transition assessment and consultation with Dr. Rabren, the school system shall identify in writing the functional daily life skills needed for Petitioner. The school system shall identify in writing the employment development skills that are needed for the Petitioner. The school system shall identify in writing community based sites where functional daily living skills are to be taught a minimum of three times per week. The school system shall identify in writing the job sites where the employment skills are to be taught a minimum of three times per week.

5. That the school system shall provide to job coaches employed by the school system who have a background in vocational rehabilitation to work with Petitioner and

assist with the coordination of the transition activities. The job coaches shall accumulate transition assessment data and meet with Dr. Rabren and the Petitioner's special education teacher (or any other subsequent special education teacher of Petitioner) on a weekly basis to discuss the development of a functional employment curriculum for Petitioner. The school system agrees to have Dr. Rabren monitor the development of that program and curriculum for Petitioner.

6. That the monitoring and reporting referred to in paragraph 5 shall be on a monthly basis and shall include the dates and places where functional and employment activities were provided during the prior month. The report will identify the locations of community activities and job activities. All reports shall be provided to the following: Petitioner's special education teacher(s), the job coaches, the special education coordinator for the school system, the school superintendent, the parent of Petitioner and the attorneys for the parties.

7. That the school system shall provide $10.00 per week in operating budget for Petitioner's classroom miscellaneous supplies. The school system shall provide access to a microwave and a stove to teach Petitioner daily living skills.

8. That the school system shall have Petitioner's special education teacher, the job coaches and the paraprofessional who assists Petitioner participate in a transition conference held in March, 2005 in Auburn, Alabama. That additional in-service activities for school system personnel shall be provided including weekly meetings with Dr. Rabren in Auburn, Alabama.

9. That the school system shall engage in a consultive relationship with Dr. Rabren until Dr. Rabren advises the school system in writing that her services are no

longer required. Documentation of the cessation of the need for such services shall be provided to the Petitioner's special education teacher(s), the job coaches, the special education coordinator for the school system, the school superintendent, the parent of Petitioner and the attorneys for the parties.

10. That the school system is directed to pay for the services of Dr. Rabren.

11. That it is further **ORDERED** that the school system shall provide compensatory education to Petitioner as designated in the January 24, 2005 letter from Petitioner's counsel to the attorney for the school system which is attached hereto as Exhibit "C". Included in such compensatory education shall be the provision of an additional twelve (12) months of educational services to Petitioner by the school system. Those services shall be provided during the summer of each year. The parent may accept or decline the services as she determines advisable. For each summer that the parent declines services the system shall be deemed to have fulfilled its obligation for that period.

Compensatory summer services shall be limited to functional daily living skills and community experience services at designated sites three times per week and work/job development services at designated sites three times per week.

The school system is directed to provide and/or pay for transportation and personnel to oversee and provide such summer activities for Petitioner.

12. That the school system shall pay to Petitioner's attorney reasonable attorney fees in the amount of $4,403.00 as well as reimbursement of expenses not to exceed $100.00.

13. That the school system is directed to comply with this Order within thirty (30) days of the date hereof.

DONE this the __8__th day of February, 2005.

*Wesley Romine*
Wesley Romine
Hearing Officer

cc:  Susan DePaola
     Erika Tatum
     Emily Graham



# Karen S. Rabren, Ph.D.
1030 Stage Road
Auburn, Alabama 36830

334-887-7610                                                                                            334-663-2647

December 10, 2004

Erika Tatum
PO Box 116
Montgomery, AL 36101-0116

**RE: Elmore County**

Dear Ms. Tatum,

    This letter is written to follow up on our telephone conversation of November 24, 2004. During that conversation you asked me to develop a specific proposal to implement a community based program as required by the hearing officer in his earlier decision. The following discussion is my professional opinion as to the essential activities and requirements for such a program. I would like to mention, however, that although the following comments come about as a result of a decision relating to Gaddies Hill, they are equally critical for each of the students I observed in his class. Accordingly, the program needs to include all of these students and not simply the student involved in this litigation.

    A community-based transition program includes activities that focus on the development of functional life skills and employment. Teaching, in this type of program, takes place both in the classroom and in the community. Instruction in each of these environments, therefore, will compliment and reinforce skill development that occurs in the other. Moreover, a community-based program should have a comprehensive curriculum and a specific set of program goals and objectives that address skill development in each setting. Through the implementation of such a program the school would have a scope and sequence of transition-related skills that are beneficial to all students. This program model will also provide the needed infrastructure so each student's transition planning and programming can be individualized to meet their specific needs. While steps have been taken to begin such a program, I highly recommend that that this type of program be put into place immediately.

    In order to appropriately implement this program each student involved should undergo a transition assessment. There are several widely availably transition assessment instruments including the Transition Planning Inventory and NEXT S.T.E.P, for example. I can assist the school system in identifying an appropriate instrument or set of instruments for this purpose.

    Secondly, once purchased the system needs to conduct the assessments as well as review any other available information in order to identify the functional daily life skills and the employment development skills that need to be addressed with these students. School personnel should be able to do administer the inventories themselves since they are relatively

straightforward. I can then assist them in evaluating the information and developing program goals, if needed. This too should be done immediately.

Thirdly, the system needs to identify experiences, locations, and activities in the field (i.e. community based) in which instruction can take place. At a minimum I think the students need to be working on functional daily living skills in community experience sites three times a week.

Fourth, the system needs to identify job development sites. I think the students need to be at such sites at least three to four days per week.

Fifth, the system needs to develop a monitoring process so that as students participate in the activities their progress can be monitored.

In my professional opinion it is not possible to carry out these activities with the current personnel structure. The system needs a person dedicated to coordinating transition activities and to work with students as they engage in such activities. It is impractical for the full time classroom teacher to be engaged in teaching full time and also be charged with the responsibility of developing the community-based program without assistance.

The kind of person best suited to provide this assistance is someone who has a background in community based education, special education, and/or vocational rehabilitation. I was very impressed with Mr. Wilkins and felt that if he were released from direct teaching on a half time basis he would have the knowledge and ability to put this program together. The system would then need to simply find a half time special education teacher to be the responsible party when field activities are underway. In fact, since Mr. Wilkins is going to be the classroom teacher for the classroom component, he would be the best person to select to develop the overall program. Many school systems implement this type of half-teaching load and half-transition coordination model.

The reallocated time to plan these activities is essential to the success in the development of the community based component of the transition program. The amount of time required for this purpose is approximately four hours per day. It is simply impossible for one person to construct a program from the ground up and also be responsible for field operations while he or she is teaching full time.

So, the initial step the system needs to make is to identify a person to handle this activity—either by a half time teacher to team teach with Mr. Wilkins and allow him to handle these program responsibilities or to separately identify a new person with the background to develop and implement this program.

Once a person to assist in either manner is identified, he or she can gather the transition assessment data discussed hereinabove and meet with me and Mr. Wilkins to discuss development of the functional and employment curriculum discussed herein. This should minimize the cost to the system since I would suggest meetings with me in Auburn weekly (at the outset) and thereafter as needed by Mr. Wilkins and the additional person.

With this additional assistance, time can be allocated to develop, organize, and implement community based sites for the development of work (i.e., work experience and/or

paid work) and functional living activities (shopping, banking, etc.). I expect that the need for this additional personnel will need to continue from year to year and would not simply be employed during the remainder of this school year. As students develop as well as enter and leave the program, all of these activities will continue to be required, updated, and revised.

I would propose to do on-site monitoring of the development of the program once a month. I will do a written report including a summary for the month of the community based activities in the areas of functional life skills and vocational preparation. This report will be provided to the special education teacher(s) and/or transition coordinator, the special education coordinator, the superintendent, and the attorneys for the parties.

I also believe that in-service training is essential to the success of implementing any new program. We can discuss this in more detail, but I wanted you to be aware that there is a transition conference held in March at Auburn that the special education teacher, the selected person, and one or more of the paraprofessionals could benefit from attending. There are also distance learning opportunities available in our state and others. When an individual is identified I can be more specific as to what is required.

Finally, I would mention that in addition to whatever expense is involved with the personnel, that a functional skills curriculum is best supported by a small separate operating budget for the classroom. As you can imagine, if students are going to be taught daily living skills, for example, to make sandwiches, the teacher needs supplies to conduct such activities. I would suggest a minimal annual operating budget for this class would be about $10 a week for miscellaneous supplies. I also note that Mr. Wilkins does not have a stove in his classroom. I do not recall if he has a microwave but unlimited access to both of these is needed for the students' instruction in independent daily living skills.

In summary, the first issue that needs to be addressed is personnel. Once that person is identified, the second issue is transition assessment and thereafter, curriculum and opportunities in the area of functional activities and employment activities need to be developed. Thereafter, IEPs can be revised followed by monitoring and assessment.

I hope this outline is responsive to your inquiry.

Sincerely,

*Karen Rabren*

Karen Rabren, Ph.D.
Consultant



# HILL, HILL, CARTER, FRANCO, COLE & BLACK, P.C.

425 SOUTH PERRY STREET
MONTGOMERY, ALABAMA 36104

POST OFFICE BOX 116
MONTGOMERY, ALABAMA 36101-0116

TELEPHONE: (334) 834-7600
www.HillHillCarter.com

ERIKA PERRONE TATUM

Fax: (334) 263-5969
etatum@hillhillcarter.com
★Also Admitted in Georgia

January 21, 2005

Susan Shirock DePaola, Esquire
1726-B West Second Street
Montgomery, Alabama 36106

RE: <u>**Gaddies Hill v. Elmore County Board of Education**</u>

Dear Susan:

Pursuant to the hearing officer's January 6, 2005 Order, the Elmore County Board of Education responds to Dr. Karen Rabren's December 10, 2004 recommendations as follows:

> The Board agrees to implement the recommendations with regard to Gaddies Hill. Gaddies will be provided with a transition assessment and Dr. Rabren will be utilized in evaluating the information and developing program goals. The Board has already identified several experiences, locations, activities, and job development sites in the community and will continue to do so with the assistance of Dr. Rabren.

> Regarding the recommendation of the personnel structure, there are two job coaches in the school system with a background in vocational rehabilitation who will work with Gaddies and help coordinate transition activities. These job coaches will also gather the transition assessment data and meet with Dr. Rabren and Mr. Wilkins (or any other subsequent special education teacher for Gaddies) as needed to discuss the development of the functional and employment curriculum. The Board also agrees to have Dr. Rabren monitor the development of the program for Gaddies.

> On the issue of the classroom, the Board agrees to have a $10 per week operating budget for Gaddies' classroom for miscellaneous supplies. Although a stove is not in Gaddies' classroom, the Board will ensure that there is access to the stove located in the home economics classroom at the high school.

> Finally, the Board further commits to have Mr. Wilkins, the job coaches, and the paraprofessional who works with Gaddies participate in the transition conference held in March in Auburn.

HILL, HILL, CARTER, FRANCO, COLE & BLACK, P.C.

Susan Shirock DePaola, Esquire
January 21, 2005
Page 2

I hope this resolves the due process hearing complaint. If you have any questions or feel that all of Dr. Rabren's recommendations were not addressed in this response please do not hesitate to contact me

Sincerely yours,

*Erika Tatum*

Erika Perrone Tatum

ET/wwm
Enclosure
5585.0004/f:DePaola, Susan S.-012105.wpd



# SUSAN SHIROCK DEPAOLA
## ATTORNEY AT LAW

1726 West Second Street   Suite B
Montgomery, Alabama 36106

Telephone:(334)262-1600
Facsimile: (334)262-1638

January 24, 2005

**VIA FACSIMILE & US MAIL**

Erika Tatum
PO Box 116
Montgomery, AL 36101-0116

**RE: Gaddies Hill**

Dear Erica,

This letter is written in response to yours of January 21, 2005. I would suggest that the hearing officer enter an order which addresses the following points.

As I understand your letter, the system is not committing to implementing these recommendations for any student other that Gaddies Hill despite the section of Dr. Rabren's report which indicates that all of the identified activities are "equally critical for each of the students [she] observed in [the] class." In other words, they may or may not provide these services to other students. I want that point clearly understood by Dr. Rabren and specifically referenced in the hearing officer's order. If I do not understand their position please advise.

The Hearing Officer can then enter an order adopting Dr. Rabren's recommendations except as amended by your letter of January 21, 2005. I would envision both her recommendation and your letter would be exhibits to the final order.

Of course it was not Dr. Rabren's job to address issues such as compensatory services. At this time, Gaddies has lost not only all of the time prior to the last due process hearing, but an additional year and a half since that time without a community based program. I also don't expect the proposed program to be immediately operational.

Therefore, I would require that the Elmore County Board agree to provide an additional 12 months of educational services to Gaddies as follows. Those months will be provided during each summer and the mother can accept or decline the services if for some reason Gaddies would be unavailable during that summer. If the parent declines, the system will have fulfilled its obligation for that summer.

The summer services would be limited to the functional daily living skills at community experience sites three times per week and the work at job development sites

three days per week and of course the system would be required to provide transportation and personnel to oversee these activities.

I would also expect Dr. Rabren's monitoring to continue until such time as she feels that it is no longer required. We would also continue to receive her reports as set forth in her recommendations during that period.

Finally, of course, we would expect the Board to agree to pay the attorneys fees and costs that have been incurred by the parent in this proceeding. I am in the process of putting together an itemization but <u>at this time</u> the fee amount appears to be $4,403.00. I would not expect the expenses to exceed $100.00. Of course additional time may be incurred in resolving the issues in this case.

Please give me a call at your earliest convenience so that we can advise the hearing officer what issues are left in the case.

Very Truly Yours,

SUSAN SHIROCK DEPAOLA

C: J. Corbett