

**STATE OF ALABAMA**
# DEPARTMENT OF EDUCATION



Joseph B. Morton
State Superintendent
of Education

Alabama
State Board
of Education

Governor Bob Riley
President

Randy McKinney
District I

Betty Peters
District II

Stephanie W. Bell
District III

Dr. Ethel H. Hall
District IV
Vice President
Emerita

Ella B. Bell
District V

David F. Byers, Jr.
District VI

Sandra Ray
District VII
President Pro Tem
and Presiding Officer

Dr. Mary Jane Caylor
District VIII

Joseph B. Morton
Secretary and
Executive Officer

June 30, 2005

## M E M O R A N D U M

**TO:**     Darnell Coley

**FROM:**  Emily D. Graham
              Education Administrator
              Special Education Services

**RE:**     Certified Copy of Due Process Hearing Files for Gaddies Hill v Elmore
              County Board of Education

Enclosed is a copy of the official Department of Education due process hearing files for
02-109 and 04-92.  The documents include the due process hearing officer's decision,
order, transcripts and certification, and documentation of the implementation of the
decision and order.

Enclosure

cc:     Mabrey Whetstone

# GADDIES HILL

# V

# ELMORE COUNTY BOARD OF

# EDUCATION

# SPECIAL EDUCATION DUE

# PROCESS HEARING CASE NUMBER

# 02-109

# DUE PROCESS HEARING

# OFFICER'S DECISION

## APRIL 1, 2003

## BEFORE THE DEPARTMENT OF EDUCATION
## OF THE STATE OF ALABAMA

GADDIES HILL,                          )
                                       )
                                       )
        Petitioner,                    )
                                       )
v.                                     )        SPECIAL EDUCATION NO: 02-109
                                       )
ELMORE COUNTY BOARD                    )
OF EDUCATION,                          )
                                       )
        Respondent.                    )
_____)



### DUE PROCESS DECISION

### I.

### <u>Procedural History</u>

A due process hearing was held as a result of a request by the attorney for Petitioner. The hearing request was dated November 27, 2002. The request for due process hearing alleged that the school system had failed to develop an individualized education plan (IEP) for the Petitioner which conformed to the Individuals With Disabilities Education Act (IDEA). The request further alleged that the local education agency had failed to identify and implement an appropriate curriculum for the Petitioner.

A pre-hearing teleconference was conducted on January 24, 2003. At that time Petitioner's counsel maintained that the school system had failed to provide a free appropriate public education to the child because the education program implemented for the Petitioner was inadequate. Specifically, the attorney for Petitioner submitted that the curriculum being used for Petitioner's education was inappropriate. The lawyer for Petitioner also asserted that Petitioner's IEPs did not confer an educational benefit on her

client.

The school system insisted that it had provided a free appropriate public education to the Petitioner. It maintained that the education program and IEPs implemented for the child allowed him to progress satisfactorily in school.

The due process hearing was held on March 11, 2003. It was completed on March 12, 2003.

The Petitioner was represented at the due process hearing by his lawyer. Also present on his behalf was his mother. A representative of the Special Education Action Committee (SEAC) attended the hearing.

At the request of the parent, the hearing was open. However, all witnesses were sequestered in accordance with the demand of Petitioner's counsel.

Present on behalf of the Elmore County Board of Education was its Special Education Director. The Board was represented by its attorney.

## II.

### <u>Issues Presented</u>

Counsel for the Petitioner alleged that the special education program designed for Petitioner by the Elmore County Board of Education did not meet the unique needs of the child. The lawyer criticized the content, methodology and delivery of the instruction provided by school officials to Petitioner. According to her, the content of Petitioner's course of study (his curriculum) had not been modified to meet the needs of the child.

Counsel also maintained that the IEPs developed for the child for the 2001-2002 school year and the 2002-2003 school year were inappropriate or improperly written.

2

The attorney for the school system submitted that the child's curriculum was designed to provide educational benefit. He maintained that the IEPs written for the child had allowed the child to progress both with respect to his academics and his behavior.

### III.

### Statement of Facts

The Petitioner is fifteen years old. He was born on December 4, 1987. He is the son of Juanita Corbett. Petitioner lives with his mother in Wetumpka, Alabama.

The Petitioner suffers from moderate to severe mental retardation. (Petitioner Exhibit 3)(hereinafter referred to as P. ___). His intelligence quotient (IQ) is 39. Petitioner is also speech and language impaired. He has received special education services since he has been enrolled in public schools.

Petitioner entered the Elmore County school system at the beginning of the 2000-2001 school year. He is presently assigned to Wetumpka Junior High School. He attends the eighth grade.

The psychologist for the school system testified that when Petitioner transferred to the Elmore County school system he was considered for eligibility for special education services. No curriculum recommendations were made at that time. Instead, school personnel reviewed the Petitioner's IQ, assessments and progress at the system that he previously attended in determining whether it would be necessary to modify the curriculum for him. Based on the information reviewed it was felt that Petitioner could progress to the second grade level in academic subjects.

At that time Petitioner was also referred for occupational therapy services. (Board

3

Exhibit 13)(hereinafter referred to as Bd. ___).  The occupational therapist did not evaluate Petitioner with respect to activities that were directed to daily living skills.  She determined that direct occupational therapy services provided by her to Petitioner were not necessary.  She was available to consult on a program of occupational therapy for Petitioner as was needed.  (P. 1 p.131).  According to the occupational therapist, Petitioner's teachers and aides could provide occupational therapy to Petitioner.  The occupational therapist recommended that Petitioner engage in fine motor coordination activities at school.  School personnel have undertaken to have Petitioner engage in activities designed to improve his fine motor skills.

The school psychologist agreed that Petitioner needed a behavioral intervention plan because his behavior impeded his learning.  Consequently, after Petitioner enrolled in the Elmore County school system a behavior management plan was developed to address Petitioner's non-compliant behavior.  (P. 1 p.68, 131).

After an initial assessment of the child, it was determined that the goals for Petitioner should revolve around basic independent living skills.  School personnel expected that Petitioner would live in an assisted living environment and would work in extremely structured workshop settings.  Petitioner's IEP team recommended continued emphasis on Petitioner's functional academic skills in order for him to develop independence in his daily activities.  Part of that goal was for Petitioner to be able to comply with the instructions of those who taught or supervised him.

The school psychologist said that with those goals in mind the child has engaged in pre-school activities.  (P. 2, 4 and 5).  Those activities include coloring pictures and tracing and copying letters and numbers.  The psychologist thought that Petitioner should

4

continue with such activities.

The primary focus during much of the current school year has been to try to teach Petitioner his name, his telephone number, his street address and his mother's name. The school psychologist believed that those and other pre-school activities were appropriate for the child.

The special education teacher who served as Petitioner's case manager and who taught him math said that Petitioner's curriculum is essentially that which would be used for a pre-school student. She acknowledged that although that curriculum was the primary means of instructing Petitioner, the child does not know all of his body parts, he cannot unlock a door and he cannot tie his shoe. The math special education teacher explained that school personnel had tried to provide general education courses to the Petitioner similar to those that would be provided through the junior high school curriculum but brought to Petitioner's level. She commented that school system employees had adopted the course work to Petitioner's abilities as best they could.

School personnel are also working on Petitioner's toileting skills. Those skills are part of his behavior intervention plan. (P. 1 p.83). The toileting skills being taught Petitioner include acting appropriately when using the bathroom, not disturbing or glaring at those students who are using the bathroom at the same time as Petitioner and shutting the bathroom stall door when Petitioner uses the toilet.

According to the Petitioner's language arts special education teacher Petitioner's mother wanted her child to be able to read. Consequently, school officials have worked to achieve that result. The language arts teacher believed that the child eventually would be able to read a short phrase. The teacher added that it was decided by the IEP team

5

that the Petitioner should be taught to write his name because it was difficult to understand his speech.  His ability to write his name would enable the Petitioner to identify himself should it be necessary to do so.

Petitioner's math special education teacher testified that her activities with Petitioner are designed with the goal of allowing the Petitioner to work in a structured environment and to comply with the instructions of supervisors.  Included in those goals are Petitioner learning to write his name and address.  The math teacher, however, admitted that she had neither analyzed nor was she qualified to analyze how that goal would enhance Petitioner's potential job skills.

Petitioner's language arts teacher wanted Petitioner to  recognize his name in case an accident occurred which would require that he identify himself.  Other than writing his name the language arts special education teacher had not analyzed how the language art instruction that she provided Petitioner would relate to job skills that Petitioner might need if he were employed.  Petitioner's language arts teacher added that she did not believe that Petitioner could work independently in the community.

Although both the language arts teacher and the math teacher said that certain vocational skills were being taught to the child, the IEPs for Petitioner did not disclose what those skills were.

A professor of special education at the University of Alabama at Birmingham, Alabama testified as an expert for the Petitioner.  This witness stated that the use of a traditional pre-school curriculum such as that being implemented by school personnel was totally improper for Petitioner.  (P. 1 p.192-197).  He expressed that the program being provided by the Elmore County Board of Education had conferred no educational benefit

6

to the child. The professor of special education emphasized that school officials should examine what Petitioner's skills are and his areas of strength. They should then determine what are appropriate goals in regard to those areas of skill and strength and how those goals could best be achieved. He commented that Petitioner's teachers should examine what the Petitioner can do, not what he cannot do.

On cross-examination the professor of special education admitted that many persons in the special education field would not criticize the examination of a mentally retarded child's deficits - as opposed to his strengths - in implementing an education program for the child. The witness also acknowledged that there were views in the special education field that supported the use of a pre-school curriculum for mentally retarded youngsters such as Petitioner. He agreed that some of the specific techniques that school personnel had attempted with Petitioner had conferred educational benefit to the child.

The professor of special education believed that Petitioner could work independently in the community provided that he was exposed to community activities. This gentleman expressed that Petitioner needed to learn survival skills such as being able to lock a door, operate a microwave, use a telephone, call 911 and take care of himself if he sustains a cut or other minor injury.

The psychologist for the school system agreed that life skills should be taught to Petitioner. The psychologist recognized that as Petitioner grew older the necessity of learning those skills would become more important than having Petitioner work in academic areas. The school psychologist expressed his opinion that although Petitioner could not yet write his name he was capable of learning by sight survival words such as exit, stop, men, etc.

7

According to the school psychologist the education program described in the individualized education plans (IEPs) for the 2001-2002 and 2002-2003 school years was adequate to permit academic progress on the part of Petitioner. The school psychologist did not feel that the changes suggested by the expert witness for Petitioner were warranted.

Petitioner's special education math instructor reported that as a consequence of her work with Petitioner during the 2002-2003 school year Petitioner had improved in a number of areas. Those areas included his manners, his interaction with other children, his eating habits, his personal hygiene, his toileting skills and his ability to call his mother by her correct name (as opposed to her nickname). The teacher added that Petitioner could say a partial address and telephone number. He can also go about the school campus without supervision. She remarked that Petitioner listens better and is more compliant with instruction. The teacher expressed that Petitioner's IEP was sufficient for him to make educational progress. According to her, some of the benchmarks contained in the IEP such as toileting skills had been achieved by the Petitioner.

Petitioner's language arts special education teacher also testified that Petitioner's IEP was sufficient to allow him to make educational progress. She said that Petitioner's mother had agreed to the IEP. The teacher admitted that school personnel were attempting activities for Petitioner that were not specified in his IEP but felt that those activities were helpful to the child's education program. She remarked that Petitioner had progressed. She stated that Petitioner can say some letters. She added that his writing has improved. Although he cannot write, when Petitioner traces his letters and words he stays on the lines of the letters and words that he is tracing. (Bd. 1 and 4). Petitioner's

8

toileting skills have improved as well.  He washes his hands most of the time when he completes that function.

The special education teacher who works with Petitioner on his fine motor skills stated that she has seen improvement in the Petitioner's assignments.  Petitioner now has the ability to color within the lines of a picture and his ability to trace letters has improved.  (Bd. 5).  The teacher also taught Petitioner science and social studies.  According to her, Petitioner improved in those subjects.

Nonetheless, the school psychologist admitted that despite the years that Petitioner has attended school he has made only minimal progress in his pre-academic activities.  He cannot write his entire name or his address.  He cannot recognize numbers or letters.  (P. 1 p.163).  He can only count to three. (Id.)

The Petitioner was tested in April, 2002 and again in October, 2002 when he was reevaluated.  Tests administered to Petitioner revealed an IQ of 39.  The April, 2002 achievement test showed that Petitioner had made no gains in spelling, reading and arithmetic.  (P. 1 p. 126-29).  The achievement test conducted in October, 2002 showed only slight gains in one subject, arithmetic.  (P. 1 p. 166).  It was acknowledged by all of the school personnel who testified on the subject that as far as Petitioner's standard scores were concerned there was no progress.

Moreover, an adaptive behavior evaluation scale showed serious levels of concern in all areas in which Petitioner received instruction.  (P. 1 p.141).  The school psychologist reported that although Petitioner had shown improvement in his social skills, the child had not experienced any significant progress in academic areas.  Still, this individual believed that the child could benefit from a continuation of his present instruction.

9

An Alabama Alternate Assessment performed in 2002 revealed that Petitioner had made no progress in any area of instruction except in self-care/living skills. (P. 1 p.88). That was true despite the fact that Petitioner spends most of his school day in special education resource rooms served by a teacher and an aide.

Petitioner's language arts special education teacher said that the IEP committee for Petitioner's 2002-2003 school year reviewed his April, 2002 wide range achievement test results. The Petitioner had zeros in spelling and reading. For that reason his IEP did undergo a substantial revision in the area of language arts. (Compare P. 1 p.64 with P. 1 p.75).

Petitioner's special education math teacher admitted that the child had made little progress in reading or language arts between the 2000-2001 school year and the 2001-2002 school year. (Compare P. 1 p.45 with P.1 p.64). Much of the work in the those years was directed to Petitioner's ability to say the ABC's. Petitioner was retained in the seventh grade as a result of his inability to progress satisfactorily. This year, Petitioner entered the eighth grade. His special education math teacher stated that it was decided that the child would try to learn his name and address. At that time school personnel ceased to work on his ABC's and focused on encouraging Petitioner to write his name. That effort has not been successful. On occasion Petitioner can write three letters of his first name. The writing, however, is virtually illegible. (Bd. 3 and 4).

According to the professor of special education who testified as an expert witness for Petitioner, the child is not progressing in his academics. As an example, he commented that the child entered the Elmore County school system with an IQ of 62. His

10

IQ is currently measured at 39.[1]  Other evidence in support of this witness' assessment of Petitioner's lack of progress included the fact that Petitioner is no longer capable of performing many of the activities that it was reported that he could do when he entered the Elmore County school system.  (P. 1 p.92-114).

The testimony was also conflicting regarding improvements in Petitioner's behavior. Petitioner's language arts special education teacher testified that there were reduced incidents of his hitting other children or inappropriately touching them.  There were, however, two incidents of cursing and aggression by the child during the 2002-2003 school year.  The language arts teacher said that each of those episodes were addressed in an appropriate manner.

The math special education teacher admitted that on another occasion she struck Petitioner on the arm after he cursed.

Petitioner's school counselor stated that she provided counseling to Petitioner two to three times a month.  She discussed with him responding appropriately to other persons who may be in the bathroom, closing the door when he finishes in the bathroom and washing his hands afterward.  She used role playing to accomplish those goals.  According to her, Petitioner has improved to the point that he can perform satisfactorily in all of the areas that they worked on.

Similarly, Petitioner's special education math teacher expressed that Petitioner's behavior had improved.  Petitioner does not hit other children as often as he did.  He has

---

[1] It appeared from the evidence that the IQ test provided to the Petitioner by his former school system was not the same as the IQ test which was used by Elmore County Board of Education officials to measure Petitioner's IQ.  (Bd. 6 and 7).  The Elmore County Board of Education used an IQ test designed to determine nonverbal intelligence.  (Bd. 8).

11

engaged in appropriate conduct in group settings. Still, she acknowledged that his behavior remained a problem and that school personnel have had to contact Petitioner's mother about it. She added that most of the incidents of misbehavior occurred during the 2001-2002 school year rather than the present school year.

On the other hand, Ms. C. testified she was contacted by school officials three or four times a week concerning her son's misbehavior. She complained that she was told on a number of occasions to come and pick-up Petitioner from school. She acknowledged that many of those incidents occurred during the 2001-2002 school year.

The professor of special education who testified was also critical of the individualized education plans used with respect to the child. He explained that the student was in a self-contained special education classroom despite the fact that the IEPs disclosed that Petitioner received all of his special education services with his non-disabled peers. The witness also reported that transition services for the young man were entirely absent from the 2001-2002 IEP even though such services were appropriate for Petitioner. In the 2002-2003 IEP the transition services identified were inappropriate because they did not encompass an effort to expose the Petitioner to the community and community activities.

The professor of special education continued by stating that although grades were used to mark the child's progress, information reflecting mastery of specific skills would have been more appropriate. He noted that an assessment of Petitioner's educational program appeared to be entirely subjective. The IEPs disclosed a lack of specificity and measurable standards. For example, in math Petitioner's grades were determined by whether Petitioner was compliant or completed his worksheets. In language arts the

12

grades were assigned on the basis of task completion as opposed to mastery of a specific skill.

Because there was no relevant curriculum for the Petitioner, the special education professor expressed that the school system had failed to establish present levels of performance and meaningful annual goals for the Petitioner in the IEPs. This gentleman testified that the IEPs for the Petitioner failed to meet the standards required by IDEA.

The testimony of the special education math teacher reflected other discrepancies with the child's IEPs. On the 2001-2002 IEP Petitioner's math was stated to be oral. There was no mention of his ability to write numbers. The benchmarks in several areas of instruction were for the end of the year instead of a set period such as the first grading period. (P. 1 p.63). On the math portion of the IEP the present level of performance was incomplete. (Id.). In the language arts section the IEP did not indicate how many new words Petitioner would learn. (P. 1 p.64).

The IEPs for 2001-2002 and 2002-2003 did not contain any present level of performance, goals or benchmarks for the subjects of social studies and science. Although the math special education teacher said that Petitioner was being instructed in vocational type skills, the IEPs did not reveal the nature of that instruction or what skills were taught. Indeed, the math teacher admitted that the IEPs did not contain that information and should have been changed.

In addition, the math teacher acknowledged that she had misstated that least restrictive environment portion of the IEPs by indicating that Petitioner received special education services with his non-disabled peers when in fact his only exposure to his non-disabled peers was during his physical education class and lunch time. (P. 1 p.69 and 84).

13

The math teacher also admitted that the IEPs did not address a number of skills identified by Petitioner's former school system as necessary for the child to master at the time that Petitioner enrolled in the Elmore County school system in August of 2000. (P. 1 p.93-116).

Although Petitioner receives counseling and apparently has for some time, the math teacher recognized that that information was not contained in Petitioner's 2002-2003 IEP until an addendum was added later in the year. (P. 1 p.85).

The 2002-2003 IEP specifies that the transition service for Petitioner will be that he take the LCCE (Life Centered Career Education) program at the end of the school year. (P. 1 p.71). However, that program requires a third grade reading level so that Petitioner is unable to access the LCCE curriculum.

Finally, the 2002-2003 IEP specifies that daily progress notes would be provided to Petitioner's mother. (P. 1 p.70). The testimony and written evidence disclosed that Ms. C. had received those notes only on a sporadic basis. (P. 7).

## IV.

## Discussion of Issues

Special education is defined as instruction designed to meet the unique needs of the child. Those needs include an examination of content, methodology and delivery of instruction. It was agreed by the parties that the content (or curriculum) used for an individual should be modified to meet the unique needs of the child. A curriculum should bring a student to a desired outcome or goal which must be based on his/her strengths, areas of disability, progress and interests. In this instance the curriculum used by Board

14

employees did not meet the unique needs of the child.  Although the school system has provided a pre-school academic curriculum to the Petitioner it is apparent that he cannot be adequately educated by that means.

The decision in <u>Board of Education Hendrick Hudson School District v. Rowley</u>, 458 U.S. 176 (1982) makes it clear that a local education agency is only required to confer "some" educational benefit to a child who is entitled to special education services.  <u>E.g.</u> <u>J.S.K. v. Hendry County School Board</u>, 941 F. 2d 1563 (11th Cir. 1991)(a system can demonstrate that it is providing educational benefit when it can show that a student is making measurable and adequate gains in the classroom).  The benefit conferred need not be maximized to be adequate.  <u>E.g.</u> <u>Devine v. Indian River County School Board</u>, 2001 WL 460511 (11th Cir. 2001).  Thus, it is apparent from the decision in <u>Rowley</u> and cases decided since it that a school district is not required to provide an optimum program for a child, but only one from which a child can receive measurable and adequate educational benefit.  However, the educational benefit to a child must be more than "de minimus."  <u>Doe v. Tullahoma City Schools</u>, 9 F. 3d 455, 459 (6th Cir. 1993).

Based on the evidence presented it is apparent that the educational benefit provided to this child by his program is <u>de minimus</u>.  It does not meet the rather low threshold stated by <u>Rowley</u>.  The child is not achieving significant progress in his studies.  Instead, it is apparent that Petitioner needs services - whether they be called transition services or otherwise - that will enable him to function when he completes his schooling with the Elmore County Board of Education.  His education program should be directed to activities that promote movement from school to post-school activities, such as employment and independent living.  The services that he should be provided by his education program

15

should be coordinated and directed toward a specific outcome. The strengths and interests of the Petitioner should be taken into account in the selection of the services to be provided to him by the local education agency. Such steps have not been undertaken by the school system at the present time.

A proper IEP is essential to the provision of a free appropriate public education. The content of the IEP document is important. It should contain a statement of the child's present level of educational performance. The statements in the IEP should cover academic and non-academic areas. The IEP should be written in objective terms to the extent possible, typically with the data from the child's evaluation. Deficiencies indicated by the present levels of educational performance should be addressed both by the goals and objectives and by the special education and related services listed on the IEP.

Annual goals and short-term instructional objectives are a second mandatory component of an IEP. The goals and objectives are not as specific as those found in instruction plans but they must provide a mechanism for determining whether the placement and services are enabling the child to make educational progress. Annual goals or statements should describe what the child can reasonably be expected to accomplish during the year in the special education program. Short-term instructional objectives are measurable, intermediate steps between the child's current levels of educational performance and the annual goals. The goals and objectives must be written before placement and may be revised only at another IEP meeting.

A third required component of the IEP is a statement of the particular special education and related services to be provided to the child, with the dates for initiation and duration of the service and a statement of the extent to which the child would be able to

16

participate in regular education programs. The IEP is a commitment by the school district to provide those services free of cost, either directly or by another public or private agency.

A fourth component of the IEP is transition services for students beginning at fourteen years of age (or younger if appropriate). Those services should be designed to allow a student to function in society once he or she completes their education.

Courts have held that IEPs which fail to state the specific educational services provided or which are inappropriate are invalid. <u>See</u> <u>Cleveland Heights City School Dist. v. Boss</u>, 1998 WL 219758 (6th Cir. 1998); <u>Thornock v. Boise Indep. School Dist.</u>, 767 P. 2d 1241 (1988) <u>cert. den'd</u>, 490 U.S. 1068 (1989). Failure to have a proper IEP may result in a finding that the school district has not provided a free appropriate public education.

In this case the evidence disclosed a number of deficiencies in the Petitioner's IEP for both the 2001-2002 school year and the 2002-2003 school year. Consequently, the IEPs did not fulfill the mandatory standards required of an IEP by IDEA.

### V.

### <u>Conclusions</u>

The school system is relying on a pre-school curriculum to educate Petitioner. The primary focus of the curriculum is to teach Petitioner to say and write his name, address and telephone number. At present the Petitioner cannot write his name. He cannot recognize numbers or letters. Thus, it is apparent that the school system's approach has not been successful. It has conferred little - if any - educational benefit upon Petitioner. He is not making progress. The educational program implemented by the local education agency is not working. It is time to try something different. The school system should

17

implement a curriculum designed to enable Petitioner to earn a living and to engage in independent - albeit assisted - living.

The Board of Education argued that the choice of the curriculum to be implemented by a local education agency is a question of methodology which in the area of special education courts and hearing officers have generally avoided interjecting their views. Board of Education Hendrick Hudson School District v. Rowley, 458 U.S. at 207 (courts must be careful to avoid imposing their view of preferable educational methods). For example, school personnel envision Petitioner working in a sheltered workshop so that they directed his activities to that goal. Petitioner's expert disagreed with that goal, believing that Petitioner could work in the community. Similarly, employees of the Board have Petitioner repeat information (name, address, etc.) over and over again so that Petitioner will learn by repetition. Petitioner's expert expressed that there were better uses of Petitioner's time. However, in this case the selection of the curriculum for Petitioner is fundamental to the manner in which Petitioner is to be educated during his remaining years in the public school system. Consequently, its choice transcends mere philosophical differences on how Petitioner should be educated. Petitioner's need for a life skills curriculum is essential to his receipt of a free appropriate public education. For that reason an IEP should be written and implemented that meets that approach.

In this case Petitioner's IEPs were improperly written. It suffices to say that there were a number of deficiencies contained in them. None of those deficiencies by themselves would indicate a denial of a free appropriate public education but taking them in their totality it must be concluded that the school system violated Petitioner's right to a free appropriate public education by not drafting and implementing appropriate IEPs. That

18

failure goes beyond the mere fact that school officials chose to implement a curriculum different than that demanded by Petitioner's counsel or that determined by the Hearing Officer in this decision. For example, social studies and science were not addressed in the IEPs. The least restrictive environment statement contained in the IEPs was false. The math and language arts components of the 2002-2003 IEP contained the same isolated goals of saying and writing Petitioner's name and address and are virtually indistinguishable. There are no other goals that relate to potential skills that would permit employment of the Petitioner or assist him in basic living. That was true despite the fact that school officials maintained that they were assisting Petitioner in regard to those areas. For that reason the inadequacies of the IEPs must be deemed a failure by the Elmore County Board of Education to provide a free appropriate public education to the Petitioner.

VI.

**Specific Findings**

1.    The IEP for the 2001-2002 school year was improperly written and thus violated Petitioner's right to a free appropriate public education.

2.    The IEP for the 2002-2003 school year was improperly written and thus violated Petitioner's right to a free appropriate public education.

3.    The local education agency is providing an inappropriate curriculum to the Petitioner. That curriculum is not designed to provide educational benefit to the Petitioner. Accordingly, within fourteen (14) days of this decision an independent educational placement team shall convene to construct an IEP with measurable outcomes designed to prepare Petitioner for life after school. That IEP will include a transition component and a functional foundation incorporating community based education. The school system is

19

urged to consult with appropriate outside individuals to develop such a program. The school system should also consult with its occupational therapist to determine activities which are necessary for Petitioner to live and work as independently as possible. Those activities shall be designated in Petitioner's IEP. To the extent that an occupational therapist is required to assist Petitioner in those activities the school system shall provide that assistance as a related service.

**VII.**

**Notice of Appeal Rights**

Any party dissatisfied with the decision may bring an appeal pursuant to 20 U.S.C. §1415(e)(2). The party dissatisfied with this decision must file a notice of intent to file a civil action with all other parties within thirty (30) calendar days of the receipt of this decision. Thereafter, a civil action must be initiated within thirty (30) days of the filing of the notice of intent to file a civil action.

DATED this the ___1st___ day of April, 2003.

Wesley Romine
Hearing Officer

cc:    Susan DePaola
       Houston Howard
       Emily Graham

20

## APPENDIX OF ADMITTED EXHIBITS

Petitioner's Admitted Exhibits:

P. 1          Notebook: Cumulative records of Petitioner

P. 2          Language art work samples of Petitioner

P. 3          Excerpts from Diagnostic and Statistical Manual IV (DSM-IV)

P. 4          Math work samples of Petitioner

P. 5          Examples of miscellaneous activities by Petitioner

P. 6          Work samples reflecting writing of Petitioner's name

P. 7          Progress notebook for Petitioner (November, 2002 to present)

P. 8          December 9, 2002 report by Dr. Gargiulo (Petitioner's expert and professor
              of Special Education at the University of Alabama at Birmingham, Alabama)

P. 9          September 22, 2000 occupational therapy screening for Petitioner

P. 10         June 26, 2002 telephone contact log re: ESY services

P. 11         Data review log for Petitioner's records

Board's Admitted Exhibits:

Bd. 1         August 7, 2002 work samples of Petitioner

Bd. 2         February 12, 2003 work samples of Petitioner

Bd. 3         August 13, 2002 work samples of Petitioner

Bd. 4         October 15, 2002 work samples of Petitioner

Bd. 5         February 27, 2003 work samples of Petitioner

Bd. 6         Buros Mental Measure Yearbook (excerpt from a manual critiquing
              intelligence test used with respect to Petitioner)

Bd. 7         Excerpt from manual critiquing intelligence test used with respect to
              Petitioner

Bd. 8            Excerpt from TONI - 3 Examiners Manual (Test of Nonverbal Intelligence)

Bd. 9            No exhibit offered

Bd. 10           No exhibit offered

Bd. 11           August 9, 2001 Occupational therapist recommendations re: fine motor
                 activities for Petitioner

Bd. 12           November 20, 2002 notification of eligibility of Petitioner for special
                 education: speech language impaired and mentally retarded

Bd. 13           September 11, 2000 educator's observational checklist for occupational
                 therapy referral for Petitioner

Bd. 14           Fine motor activities to increase hand dexterity and precision skills list

Bd. 15           June 27, 2002 letter from occupational therapist to State Department of
                 Education

STATE DEPARTMENT OF

EDUCATION'S LETTER TO

ELMORE COUNTY SPECIAL

EDUCATION COORDINATOR

REQUESTING DOCUMENTATION

OF THEIR IMPLEMENTATION OF

THE 4/1/2003 ORDER FROM DUE

PROCESS HEARING OFFICER



State of Alabama
# Department of Education
### Ed Richardson
### State Superintendent of Education



**Alabama
State Board
of Education**

*Governor Bob Riley*
**President**

*Pamela M. Baker*
**District I**

*Betty Peters*
**District II**

*Stephanie W. Bell*
**District III**

*Dr. Ethel H. Hall*
**District IV
Vice President**

*Ella B. Bell*
**District V**

*David F. Byers, Jr.*
**District VI**

*Sandra Ray*
**District VII**

*Dr. Mary Jane Caylor*
**District VIII**

*Ed Richardson*
**Secretary and
Executive Officer**

April 7, 2003

Mr. Marshall Anderson
Special Education Coordinator
Elmore County Board of Education
Post Office Box 817
Wetumpka, AL 36092-0617

Dear Mr. Anderson:

We are required to document compliance with due process hearing officer's orders within thirty days after receipt of the order. I would appreciate you providing this office with documentation of compliance with the order in the matter of Gaddies Hill v. Elmore County Board of Education. Please address items 1-3 of the settlement agreement in your letter documenting implementation.

Please send this information to Ms. Emily D. Graham, Special Education Services, Post Office Box 302101, Montgomery, Alabama 36130-2101, by May 3, 2003. If you have questions, please contact Ms. Graham at (334) 242-8114.

Sincerely,

Mabrey Whetstone, Ph.D.
Director
Special Education Services

MW/gmt

pc:    Mr. Bruce Errol Fulmer
       Ms. Wanda Kirkpatrick
       Ms. Emily D. Graham

ELMORE COUNTY RESPONSE

DOCUMENTING THEIR

IMPLEMENTATION OF THE 4/1/2003

ORDER FROM DUE PROCESS

HEARING OFFICER

# Elmc.e County Board of Educ .ion

**203 Hill Street**
**P. O. Box 817**
**Wetumpka, Alabama 36092**

**BOARD MEMBERS**
**Larry Teel, Chairman**
**Kitty Graham, Co-**
**Chairman**
**Pres Allinder**
**Johnny Crothers**
**Robert Sims**
**Sandra Whatley**
**Ray Stringer**

**Bruce Fulmer**
**Superintendent**

Vicki W. Owen

**Telephone: (334) 567-1200**
**E-mail: ecboe-co@mindspring.com**

April 24, 2003



Mabrey Whetstone, Ph.D
Director
Alabama State Department of Education
Special Education Department
P.O. Box 30201
Montgomery, Alabama 36130-2101

Dear Mr. Whetstone:

This letter is for the purpose of documenting compliance with the Due Process Hearing Officer's orders in the matter of Gaddis Hill v. Elmore County Board of Education. We have addressed items (1) through (3) of the hearing officer's orders. These items are all related to inappropriate IEP issues.

Please find enclosed the revised IEP to be implemented as of April 23, 2003 to April 24, 2004, which would comply with items (1) through (3) of the hearing officer's orders.

Thank you,

Marshall D. Anderson
Marshall D. Anderson
Associate Superintendent

MDA/mar:

# I N D I V I D U A L I Z E D   E D U C A T I O N   P R O G R A M

| STUDENT'S NAME    GADDIES HILL, II | IEP INITIATION/DURATION DATES |
|---|---|
| DOB  12-10-87   SCHOOL YR  2003-04   GRADE  9th | FROM  April 24, 2003  TO  April 24, 2004 |

THIS IEP WILL BE IMPLEMENTED DURING THE REGULAR SCHOOL TERM UNLESS NOTED IN EXTENDED SCHOOL YEAR SERVICES.

## STUDENT PROFILE

Gaddies is a 15 year old, 8th grader who has been attending Wetumpka Junior High School. Gaddies does not read or write. He has poor fine motor skills when it comes to writing or tracing letters of his name, address, and telephone number. Gaddies has trouble focusing on attending to his daily tasks and is extremely distractible. Gaddies can follow verbal instructions as long as they are kept simple, but, at times, he refuses to comply. Gaddies must be prompted to do things in the classroom. He does respond to positive praise rather than negative. He works well at times with his peers, but still needs constant supervision to ensure appropriate behaviors.

Gaddies has improved with his toileting needs independently while at school. Gaddies has improved his behavior skills as far as bathroom etiquette; he no longer hits or stares at the other young men while in the bathroom. He comes out of the restroom with his clothing fixed properly and he has learned to wash his hands after caring for his toileting needs. He has mastered his manners as far as eating at the lunchroom table.

Gaddies still has behavior problems which exist, i.e., he does not comply to the teacher's request and he still has a tendency to "jump at" or "lunge" at his peers and teacher/aide, just to annoy them or to act like he is going to hit them.. This behavior, however, has just surfaced since March 2003. Gaddies will be attending Extended school and will go to Wetumpka High School for the 2003/04 school year.

Gaddies enjoys watching television at home. He also enjoys playing with his younger brother. At school, he likes to maintain the classroom environment. He enjoys music, listening to books on tape, cutting and coloring. He also enjoys participating in physical education and is friendly with strangers.

Speech services will be provided next year as well as an Occupational Therapy consultation one time per month for 30 minutes.

---

Items checked "YES" will be addressed in this IEP:

| SPECIAL INSTRUCTIONAL FACTORS: | YES | NO |
|---|---|---|
| • Does the student have behavior, which impedes his/her learning or the learning of others? | X | |
| • Does the student have limited English proficiency? | | X |
| • Does the student need instruction in Braille and the use of Braille? | | X |
| • Does the student have communication needs (deaf or hearing impaired only)? | | X |
| • Does the student need assistive technology devices and/or services? | X | |
| • Does the student need special transportation? | X | |
| • Are transition services addressed in this IEP | X | |

## NONACADEMIC and EXTRACURRICULAR ACTIVITIES

The student will have the opportunity to participate in nonacademic/extracurricular activities with his/her nondisabled peers.

[ ]*YES   [ X ]                    WITH SUPPORTS

[ ] NO.  Explanation must be provided:

## METHOD/FREQUENCY FOR REPORTING PROGRESS OF ATTAINING GOALS TO PARENTS

Progress reports (indicating whether the progress, if continued, is sufficient to meet the annual goal) will be sent to parents each grading period as scheduled by the school system every  4 1/2  weeks.        Other  9 weeks Report card

11/10/99

## TRANSITION GOAL (beginning at age 14, or younger if appropriate)

Employment Outcome:  Community based with support

Community Living Outcome:  Community based with assistant living.

## STATEMENT OF TRANSITION SERVICE NEEDS THAT FOCUSES ON THE STUDENT'S COURSE OF STUDY (beginning at age 14, or younger if appropriate)

Gaddies will follow the course of study according to the Graduation Certificate.  He needs instruction in related services (speech and OT), community based employment, and vocational assessment by Vocational rehab.

Career Interest(s):  Gaddies wants to clean houses.

## STATEMENT OF NEEDED TRANSITION SERVICES
### (beginning at age 16, or younger if appropriate)

| Components Needed | Components NOT Needed | |
|---|---|---|
| X | _____ | 1.  Instruction |
| X | _____ | 2.  Related Services |
| X | _____ | 3.  Community Experiences |
| X | _____ | 4.  Development of Employment and Other Post-School Adult Living Objectives |

Based on this student's interests, preferences, and needs, transition services will address the following checked areas.  Goal(s) and/or benchmark(s) must be written for each area checked.

| | | | |
|---|---|---|---|
| X | Vocational Evaluation (VE) | X | Advocacy/Guardianship (AG) |
| X | Employment Development (ED) | X | Community Participation (CP) |
| _____ | Postsecondary Education (PE) | _____ | Transportation (T) |
| _____ | Financial Management (FM) | _____ | Medical (M) |
| X | Personal Management (PM) | X | Other Medicaid waiver |
| X | Living Arrangements (LA) | _____ | Other |

## EXIT DOCUMENT (beginning at age 16)

| | ANTICIPATED DATE OF EXIT |
|---|---|
| [ ] Alabama High School Diploma with Advanced Academic Endorsement [ ] Alabama High School Diploma | |
| [ ] Alabama Occupational Diploma [ X ] Graduation Certificate [ ] Other_____ | May / 2010 Month / Year |

## PROGRAM CREDIT TO BE EARNED

| For each course taken, indicate program credit to be earned. | MATH | SCIENCE | SOCIAL STUDIES | ENGLISH | | | | |
|---|---|---|---|---|---|---|---|---|
| Alabama High School Diploma with Advanced Academic Endorsement | | | | | | | | |
| Alabama High School Diploma | | | | | | | | |
| Alabama Occupational Diploma | | | | | | | | |
| Graduation Certificate | Based | on | com-pletion | of | IEP & | COM-MITTEE | Decision. | |

### FOR OCCUPATIONAL DIPLOMA STUDENTS ONLY.  PORTFOLIOS MUST BE REVIEWED ANNUALLY.

The following portfolios have been:

| Reviewed | | Completed | Date | Portfolio approved for graduation on |
|---|---|---|---|---|
| [ ] | Employment English | [ ] | _____ | |
| [ ] | Job Skills Math | [ ] | _____ | |
| [ ] | Life Skills Science | [ ] | _____ | _____ |
| [ ] | Career Preparation | [ ] | _____ | Date |

11/10/99

STUDENT'S NAME: GADDIES HILL, II

AREA:    LANGUAGE ARTS

**PRESENT LEVEL OF PERFORMANCE:**
Previous tests indicate that Gaddies is at the pre-school level in all areas.  Gaddies developmentally scored between 3-4 years of age.  He uses two to three word phrases.

**ANNUAL GOAL to be measured by achievement of benchmarks:**
Gaddies will improve his basic language skills and verbal responses by the end of the school year.

| | Date of Mastery |
|---|---|
| | |

**For transition benchmark(s), person(s)/agency(ies) responsible:**
Gaddies/special educator/aides/parents

**Special Education, Related Services, Supplementary Aids & Services, Assistive Technology, Program Accommodations/Modifications and Support for Personnel**
*(including frequency, duration & location)*

Work in small groups and individually with special education teacher and assistant in the resource room for one class block daily, during both semesters of the school year

Manipulatives will be provided by the teacher

Develop a reward system to be used   *Need a timeline doing by 2 weeks into school*

Communicate lesson plans to parent for the week to facilitate learning from school to home

*a copy will be provided to parent*

| Benchmark | Transition Area | Date of Mastery |
|---|---|---|
| Gaddies will be able to recognize his name on 3 / 5 trials on five consecutive days by 12/03. | PM, ED | |
| Benchmark | Transition Area | Date of Mastery |
| Gaddies will sort items according to number, color, and shape on 4 / 5 attempts on five consecutive days by 12/03. | VE, LA, ED | |
| Benchmark | Transition Area | Date of Mastery |
| Gaddies will learn basic concepts of on/off, in/out, over/under, etc. on 3 / 5 attempts per week by 12/03. | PM, LA, ED | |
| Benchmark | Transition Area | Date of Mastery |
| Gaddies will follow one and two step instructions on 4 / 5 attempts per week by 4/04. | PM, LA, ED | |

**CIRCLE TYPE(S) OF EVALUATION FOR ANNUAL GOAL:**

| | | |
|---|---|---|
| (a) | Data Collection | f.    See Benchmarks |
| (b) | Teacher/Text Test | g.    Other _____ |
| c. | Work Samples Teacher | h.    Other _____ |
| (d.) | Observation | i.     Other _____ |
| (e) | Grades | |

Page 3 of 14

11/10/99

| | | Transition Area | Date of Mastery |
|---|---|---|---|
| **Benchmark** Gaddies will be able to dial 911 on the telephone 3/5 times by the end of the first semester of the 2003/04 school year. | | AG, LA, PM | |
| **Benchmark** Gaddies will count up to five, **consistently** 3/5 times correlating objects with numbers by the end of Dec. 2003. | | AG, LA, PM, VE | |
| **Benchmark** Gaddies will count up to six, **consistently** 3/5 times correlating objects with numbers by the end of Feb. 2004. | | AG, LA, PM, VE | |
| **Benchmark** Gaddies will count up to seven, **consistently** 3/5 times correlating objects with numbers by the end of April 2004. | | AG, LA, PM, VE | |

**STUDENT'S NAME:**       GADDIES HILL, II

**AREA:**       **MATHEMATICS**

**RESENT LEVEL OF PERFORMANCE:**       The **WRAT-3** test indicated that Gaddies is at the pre-school level in math. On the Preschool Brigance he scored on a 3 to 4 yr old level. He can rote count 1-5 correctly. He cannot recognize any numbers beyond five correctly consistently. Because of that, he has not mastered the use of the telephone in order to dial numbers.

|  | Date of Mastery |
|---|---|
| | |

**ANNUAL GOAL to be measured by achievement of benchmarks:**
Gaddies will learn to dial 911 on the telephone, and count up to seven consistently while using correlating objects with numbers by the end of the 2003/04 school year.

**For transition benchmark(s), person(s)/agency(ies) responsible:**
Gaddies, special education teacher, parents and aides

**Special Education, Related Services, Supplementary Aids & Services, Assistive Technology, Program Accommodations/Modifications and Support for Personnel**
*(including frequency, duration & location)*

Work in small groups and individually with special education teacher and /or assistant for 1 class block daily during both semesters of the school year.

Manipulatives will be provided in the Resource room

**CIRCLE TYPE(S) OF EVALUATION FOR ANNUAL GOAL**

| a. | Data Collection | f. | See Benchmarks |
|---|---|---|---|
| b. | Teacher/Text Test | g. | Other Probes |
| c. | Work Samples Teacher | h. | Other _____ |
| d. | Observation | i. | Other _____ |
| e. | Grades | | |

Page  4  of  14

11/10/99

STUDENT'S NAME: GADDIES HILL, II

AREA:    BEHAVIOR/SOCIAL SKILLS

**PRESENT LEVEL OF PERFORMANCE:**
Gaddies exhibits behaviors of non-compliance approximately 8 times a day, aggressive behaviors 5 times a day, and inappropriate touching 3 times a day.

| | Date of Mastery |
|---|---|
| **ANNUAL GOAL to be measured by achievement of benchmarks:** Gaddies will interact appropriately with other students | |

**For transition benchmark(s), person(s)/agency(ies) responsible:**
Gaddies/special education and general teachers/aides/parents

**Special Education, Related Services, Supplementary Aids & Services, Assistive Technology, Program Accommodations/Modifications and Support for Personnel** *(including frequency, duration & location)*

Gaddies will work in small groups in the resource room on a daily basis

*role playing
*peer tutoring
*Show and Tell
*the use of the point system
*direct counseling
*to be monitored by case manager/paraprofessional

| Benchmark | Transition Area PM, CP | Date of Mastery |
|---|---|---|
| Gaddies will refrain from touching other students during 3 out of 5 interactions on 5 consecutive days by 12/03. | | |

| Benchmark | Transition Area PM, CP | Date of Mastery |
|---|---|---|
| Gaddies will be able to settle minor conflicts with peers without becoming physically aggressive during 4 / 5 interactions by 12/03 | | |

| Benchmark | Transition Area PM, CP | Date of Mastery |
|---|---|---|
| Gaddies will seek teacher assistance when he is experiencing difficulty interacting with peers during 4 / 5 interactions by 12/03 | | |

| Benchmark | Transition Area PM, CP | Date of M |
|---|---|---|
| Gaddies will verbally rather than physically express his feelings toward a peer during 4 / 5 interactions by 12/03 | | |

**CIRCLE TYPE(S) OF EVALUATION FOR ANNUAL GOAL**
(a)  Data Collection           f.   See Benchmarks
b.   Teacher/Text Test         g.   Other _____
c.   Work Samples Teacher      h.   Other _____
(d.)  Observation              i.   Other _____
e.   Grades

Page 5 of 14

11/10/99

**STUDENT'S NAME:** GADDIES HILL, II

**AREA:** COMMUNICATION (ARTICULATION)

**PRESENT LEVEL OF PERFORMANCE:**
A formal articulation test indicates Gaddies is able to spontaneously produce 16 / 23 individual sounds in all word positions (beginning, middle, end). Errored sounds include /d, ʧ, j, r, O, v, j/
He currently produced one out of sixteen blends (kw). Gaddies' speech is characterized by incomplete sentences and poor sentence structure.

| | Date of Mastery |
|---|---|
| | |

**ANNUAL GOAL to be measured by achievement of benchmarks:**
Gaddies will improve intelligibility of his speech as measured by the benchmarks by April 2004.

**For transition benchmark(s), person(s)/agency(ies) responsible:**
Gaddies and speech therapist

**Special Education, Related Services, Supplementary Aids & Services, Assistive Technology, Program Accommodations/Modifications and Support for Personnel**
*(including frequency, duration & location)*

Gaddies will receive speech services from Speech Language Pathologist twice each week for 30 minutes each session in the resource room.

Target Sounds:  Initial / Ơ
Medial / r, Ơ, ɟ/
Final / d, Ơ/
Blends (l, r, sp, st, sw)

---

**Benchmark**
Gaddies will increase his MLU to an average of 3 words in 3 / 5 trials during speech therapy by 4/04

| Transition Area | Date of Mastery |
|---|---|
| LA, ED, CP | |

**Benchmark**
Gaddies will correctly produce the targeted sounds in isolation, syllable level, and word level with 7 / 10 attempts by 12/03.

| Transition Area | Date of Mastery |
|---|---|
| LA, ED, CP | |

**Benchmark**
Gaddies will correctly produce the targeted sounds at the phrase level with 7/10 attempts by 4/04.

| Transition Area | Date of Mastery |
|---|---|
| LA, ED, CP | |

**Benchmark**

| Transition Area | Date of Mastery |
|---|---|
| | M |

**CIRCLE TYPE(S) OF EVALUATION FOR ANNUAL GOAL**

(a) Data Collection          f.   See Benchmarks
(b) Teacher/Text Test        g.   Other _____
(c) Work Samples Teacher     h.   Other _____
(d) Observation              i.   Other _____
e.  Grades

11/10/99

Page ___ of ___ 14

**STUDENT'S NAME: GADDIES HILL, II**

**AREA: PERSONAL MANAGEMENT/OCCUPATIONAL THERAPY**

**PRESENT LEVEL OF PERFORMANCE:**

Gaddies can eat his lunch with set up assistance. He is working on decreasing the amount of assistance he needs to complete simple daily living skills, such as preparing a simple snack, folding his laundry, and cleaning up after himself.

**ANNUAL GOAL to be measured by achievement of benchmarks:**
By April of 2004, Gaddies will improve daily living skills to a more age appropriate level.

| | Date of Mastery |
|---|---|

**For transition benchmark(s), person(s)/agency(ies) responsible:**
Gaddies/special educator/aides/parents

**Special Education, Related Services, Supplementary Aids & Services, Assistive Technology, Program Accommodations/Modifications and Support for Personnel** (*including frequency, duration & location*)

O.T. services will be provided on a consultative basis 1 time per month for 30 minutes.

Suggestions by O.T. will be given to teacher(s)/paraprofessional to strengthen and increase upper body muscles (ie. putty, and other ideas will be used for this).

| Benchmark | | Transition Area | Date of Mastery |
|---|---|---|---|
| Gaddies will use a butter knife and fork to cut up his food with prompting from an adult on 3 / 5 trials by 4/04 | | PM, LA, ED | |
| Gaddies will prepare a simple snack in the kitchen area given the necessary ingredients with prompting on 3 / 5 trials by 4/04. | | PM, LA, ED | |
| Gaddies will insert a key into a locked door and unlock it successfully with visual and verbal prompts on 3 / 5 trials by 4/04. | | PM, LA, ED | |
| Gaddies will fold 5 towels and put them away in designated area given verbal and visual prompting on 3 / 5 trials by 4/04. | | VE, LA, ED | |

**CIRCLE TYPE(S) OF EVALUATION FOR ANNUAL GOAL**

| | | | |
|---|---|---|---|
| (a) | Data Collection | f. | See Benchmarks |
| b. | Teacher/Text Test | g. | Other |
| c. | Work Samples Teacher | h. | Other |
| (d) | Observation | i. | Other |
| e. | Grades | | |

Page 7 of 14

11/10/99

**STUDENT'S NAME:** GADDIES HILL, II

**AREA:** PERSONAL MANAGEMENT

**PRESENT LEVEL OF PERFORMANCE:**
Gaddies speaks to everyone and is not aware of strangers.

**ANNUAL GOAL to be measured by achievement of benchmarks:**
Gaddies will exercise caution with strangers.

| Benchmark | Transition Area | Date of Mastery |
|---|---|---|
| The teacher will provide instructions in the school community daily. | CP, PM, ED | |
| Benchmark | Transition Area | Date of Mastery |
| Gaddies will identify community workers verses strangers on 3 / 5 trials by the end of the first semester. | CP, PM, ED | |
| Benchmark | Transition Area | Date of Mastery |
| Teachers will provide opportunities for Gaddies to receive attention appropriately. | CP, PM, ED | |
| Benchmark | Transition Area | Date M? |
| | | |

**For transition benchmark(s), person(s)/agency(ies) responsible:**
Gaddies/special educator/parents

**Special Education, Related Services, Supplementary Aids & Services, Assistive Technology, Program Accommodations/Modifications and Support for Personnel**
*(including frequency, duration & location)*

Resource materials will be implemented in the classroom (videos, posters, etc.)

Police officer on campus will provide support if needed.

**CIRCLE TYPE(S) OF EVALUATION FOR ANNUAL GOAL**

| | | | |
|---|---|---|---|
| (a.) | Data Collection | f. | See Benchmarks |
| (b.) | Teacher/Text Test | g. | Other _____ |
| c. | Work Samples Teacher | h. | Other _____ |
| (d.) | Observation | i. | Other _____ |
| (e.) | Grades | | |

Page 8 of 14

11/10/99

**STUDENT'S NAME: GADDIES HILL, II**

| AREA: | SELF-ADVOCACY (FUTURE PLANNING) |
|---|---|

**PRESENT LEVEL OF PERFORMANCE:**
Gaddies is generally cared for by his parents.  At this point, he is very reliant on his parent.

**ANNUAL GOAL to be measured by achievement of benchmarks:**
Gaddies will be able to make a choice when presented with two or three different activities by April 2004.

| | Date of Mastery |
|---|---|

| Benchmark | Transition Area |
|---|---|
| Gaddies and his parents need to self-advocate and create experiences to allow Gaddies to begin to initiate some self-determined activities (for example: choice of games, computer, or puzzles) geared toward adult living by 11/03. | AG, LA, ED |

| Benchmark | Transition Area | Date of Mastery |
|---|---|---|
| Case manager and job coach will contact Vocational Rehab for assistance with employment options and services to be provided. | AG, VE, ED | |

| Benchmark | Transition Area | Date of Mastery |
|---|---|---|
| Gaddies will be able to choose 1 of 3 activities when presented with 3 choices by 4/04. | AG, VE, LA | |

| Benchmark | Transition Area | Date of Mastery |
|---|---|---|
| | | |

**For transition benchmark(s), person(s)/agency(ies) responsible:**
Gaddies/special educator/job coach/parents
**Special Education, Related Services, Supplementary Aids & Services, Assistive Technology, Program Accommodations/Modifications and Support for Personnel**
*(including frequency, duration & location)*

Conferences with parent, job coach, and case manager bi-monthly.

Conferences with student, job coach, and case manager bi-monthly.

Job Coach will contact Vocational Rehab for assistance if needed.

Case manager will contact parent bi-monthly to update progress with student.

Vocational Rehab will be providing Vocational Assessment by or before 8/4/03

**CIRCLE TYPE(S) OF EVALUATION FOR ANNUAL GOAL**

| | | | | |
|---|---|---|---|---|
| a. | Data Collection | f. | | See Benchmarks |
| b. | Teacher/Text Test | g. | | Other |
| c. | Work Samples Teacher | h. | | Other |
| (d.) | Observation | i. | | Other |
| e. | Grades | | | Other |

Page 9 of 14

11/10/99

**STUDENT'S NAME: GADDIES HILL, II**

**AREA:    SOCIAL RELATIONSHIPS/COMMUNITY PARTICIPATION**

**PRESENT LEVEL OF PERFORMANCE:**
Gaddies uses one or two word phrases for most social (adult) contacts. He interrupts peers and teachers to obtain assistance, sometimes talking out.

**ANNUAL GOAL to be measured by achievement of benchmarks:**
Gaddies will ask for assistance in an appropriate manner by April 2004.

| | Date of Mastery |
|---|---|

**For transition benchmark(s), person(s)/agency(ies) responsible:**
Gaddies/special educator/parents

**Special Education, Related Services, Supplementary Aids & Services, Assistive Technology, Program Accommodations/Modifications and Support for Personnel**
*(including frequency, duration & location)*

Teacher will show appropriate student behavior (manners, values, safety, etc.) in the resource using assistive technology.

Behavior Plan will be implemented in the resource room/general classes by teacher and paraprofessional

Phone conferences will be utilized

Computer curriculum reinforcing recognition of traffic/safety signs

Incorporate band shadowing/helper in high school setting – use as a reward twice monthly

Case Manager will consult with Band Director twice a month

---

**Benchmark**
Gaddies will observe classmates and other peers as they (appropriately) ask for assistance by 4/04

| Transition Area CP, PM, ED | Date of Mastery |
|---|---|

**Benchmark**
Gaddies will role-play appropriate methods to ask for assistance in the classroom and community settings by 4/04.

| Transition Area CP, PM, ED | Date of Mastery |
|---|---|

**Benchmark**
Gaddies will ask for assistance without interruptions 5 / 7 times by 4/04.

| Transition Area CP, PM, ED | Date of Mastery |
|---|---|

**Benchmark**

| Transition Area | Date of Mastery |
|---|---|

**CIRCLE TYPE(S) OF EVALUATION FOR ANNUAL GOAL:**
(a)  Data Collection
b.   Teacher/Text Test
c.   Work Samples Teacher
(d.)  Observation
e.   Grades
f.   See Benchmarks
(g.)  Other Behavior plan
h.   Other
i.   Other

11/10/99

# INDIVIDUAL BEHAVIOR MANAGEMENT PLAN

NAME GADDIES HILL II        GRADE 09   SCHOOL WHS   DATE

**IDENTIFIED TARGET BEHAVIORS** (select up to three of the child's *worst* or most *frequently* occurring behaviors):
*TARGET BEHAVIOR 1:*
Gaddies will respond to teacher directives (do what he is told)

*TARGET BEHAVIOR 2:*
Gaddies will not show aggressive behavior to adults or students

*TARGET BEHAVIOR 3:*
Gaddies will keep his hands to himself

**THE FOLLOWING 3 STEPS SHOULD BE USED TO INTERVENE WITH PROBLEMS IN THE** *TARGET BEHAVIORS* **OR SHOULD PROBLEMS OCCUR IN** *OTHER AREAS:*

**1. IDENTIFY ANTECEDENTS TO THE MISBEHAVIOR** (*events, situations, activities, people, teacher behavior* that may be encouraging the misbehavior. Identify by observation, staff or students feedback. *Modify* or *eliminate*, if possible)
*POSSIBLE ANTECEDENTS IDENTIFIED FOR THE TARGET BEHAVIORS INCLUDE:*
1. Work that is perceived to be boring or repetitious encourages defiance
2. Stern commands as directives may encourage a hostile response
3. Large groups in close quarters encorage inappropriate touching

**2. IDENTIFY A MORE APPROPRIATE SUBSTITUTE OR ALTERNATIVE BEHAVIOR THE STUDENT CAN USE NEXT TIME IN A SIMILAR SITUATION** (develop with input by the student. *Remind* him to use this new behavior)
*IDENTIFIED SUBSTITUTE BEHAVIORS TO USE FOR THE TARGET BEHAVIORS:*
1. Gaddies will communicate his frustrations to staff rather than act them out
2. Gaddies will use his hands for working and not touching others
3. Gaddies will ask for help if frustrated with his work

**3. USE CONSEQUENCES CONSISTENTLY TO DISCOURAGE THE INAPPROPRIATE BEHAVIORS AND ENCOURAGE MORE APPROPRIATE BEHAVIOR**
**A. POSITIVE CONSEQUENCES** (*consistently reinforce improvement* in TARGET BEHAVIORS using verbal praise, encouragement and other social reinforcers. Consider more concrete reinforcers should they become necessary (edibles, activity reinforcers, tangibles such as small toys/trinkets, certificates, etc.)
*ADDITIONAL POSITIVE CONSEQUENCES (other than praise) TO ADDRESS APPROPRIATE BEHAVIORS* (optional):
1. Extensive verbal praise will be used to encourage good work and behavior
2. Gaddies will earn points on a DAILY REPORT CARD that will list the number of points earned and privilege earned by the end of the day

**B. NEGATIVE CONSEQUENCES** (*consistently respond* to misbehavior using the *least intrusive* (severe) consequence that is likely to be effective and that will get the student back on task))
*NEGATIVE CONSEQUENCES FOR INAPPROPRIATE BEHAVIORS* (list if other than staff discretion/student handbook):
1. Gaddies will lose his points earned on the DAILY REPORT CARD that will list number of points denied, and privilege denied by the end of the day.
2. Time out and loss of privileges will be used to handle less severe problems

**ADDITIONAL COMPONENTS OF THE PLAN** (practical ways the staff can address antecedents and other aspects of the child's misbehavior including ways to accommodate/modify behaviors in the classroom, counseling, additional academic support, monitoring medication usage, daily report cards to be sent home to parents, etc.):
1. A DAILY REPORT CARD will be used to show the numbers of points to provide positive/negative points/ privilege
2. Directives will be given calmly with encouragement used to earn points
3. Assignments/activities will be varied and made as interesting as possible to encourage work output and compliance
4. Careful attention to seating is given in large groups to promote "hands off" others

Related Services:
Role Playing
Peer tutoring     see p. 5
Show and Tell

**PLEASE DISCUSS THE PLAN WITH THE CHILD PRIOR TO IMPLEMENTATION**

page 10 of 14

**Revised January 2003**

**IEP PARTICIPATION DOCUMENTATION**
Alabama Student Assessment Program.

When completed by the IEP Team, this checklist becomes a part of the student's IEP.

Name: Gaddies Hill, II _____ School: WHS _____ Grade: 9 __ Year: 03·04

### ALABAMA HIGH SCHOOL GRADUATION EXAMINATION OPTIONS

N/A

1. Student will participate in the *Alabama High School Graduation Exam* (AHSGE). Student is working toward the Alabama High School Diploma.
2. No accommodations are required for student to participate in the AHSGE.
3. Accommodations are required for student to participate in the AHSGE. (See attached Accommodations Checklist.)
4. Student will participate in AHSGE and GED. Student is working toward the Alabama High School Diploma and the Alternate Adult High School Diploma.
5. Student will participate in the *Alabama Occupational Portfolio Assessment* (AOPA). Student is working toward the Alabama Occupational Diploma.
6. Student will participate in *Alabama Alternate Assessment*. Student is working toward the Alabama Graduation Certificate.

Justification for the committee decision:

_____
_____
_____

### STANFORD ACHIEVEMENT TEST. TENTH EDITION (Stanford 10)

N/A

1. Student will participate in Stanford 10.
2. No accommodations are required for student to participate.
3. Accommodations are required for student to participate. (See attached Accommodations Checklist, Revised January 2003.)
4. Student will participate in *Alabama Alternate Assessment*.

Justification for the committee decision:

_____
_____
_____

### GRADE-LEVEL CRITERION-REFERENCED TEST

N/A

(Specify Assessment) _____
1. Student will participate.
2. No accommodations are required for student to participate.
3. Accommodations are required for student to participate. (See attached Accommodations Checklist.)
4. Student will participate in *Alabama Alternate Assessment*.

Justification for the committee decision:

_____
_____
_____

*or NAEP*

If the school is chosen to participate in piloting of an assessment, the student **will participate** unless the IEP Team is reconvened. Students needing special formats will participate in pilots only if special formats are available.

18

page 12 of 14

The accommodations specified below are in keeping with what has been practiced regularly in the classroom when the student receives instruction and takes classroom tests. When completed by the IEP Team, this checklist becomes part of the student's IEP.

Name: Gaddies Hill, II          School: WHS          Grade: 9     Year: 03-04

I.    **Standard Administration:**

A.    Scheduling Accommodations. Test will be administered:
 N/A      1.   At time of day most beneficial to student.
          2.   In periods of one subtest followed by a rest break of _____ minutes.
          3.   With flexible scheduling.

B.    Setting/Administration Accommodations. Test will be administered:
 ___      1.   In a small group.
 ___      2.   In a carrel.
          3.   In the special education classroom.
 N/A      4.   At the student's home (homebound students only).
          5.   With student seated in front of classroom.
          6.   With teacher facing student.
          7.   By student's special education teacher.
          8.   Individually.
          9.   Using interpreter during time oral instruction is given to the student. (Interpreter may only interpret directions--interpreter may not clarify or offer interpretation of items.) SDE APPROVAL ONLY.

C.    Format and/or Equipment Accommodations. Test will be administered with the following format and/or equipment accommodation(s):
 ___      1.   Magnifying equipment.
 ___      2.   Amplification equipment (e.g., hearing aid, auditory trainer).
 ___      3.   Noise buffers.
          4.   Templates.
 N/A      5.   Abacus.
          6.   Large-print test booklet with large-print answer document.
          7.   Adaptive or special furniture.
          8.   Slantboard or wedge.
          9.   Secure paper with magnet/tape.
          10.  Special lighting/acoustics.
          11.  Markers to maintain place.
          12.  Pencil grip.
          13.  Large-diameter soft-lead (No. 2) pencil.

II.   **Non-standard Administration: (Report will indicate non-standard administration.)**

A.    Recording Accommodations. Test will be administered with the following recording accommodation(s):
 N/A      1.   Student will mark answers in test booklet. SDE APPROVAL ONLY.
          2.   Student's answers will be recorded by proctor or assistant.
 ___           Student will point to answer.
 ___           Student will answer orally.
 ___           Student will sign answer.
 ___           Student will answer using communication device.

III.  **Non-standard Administration: (Only raw scores reported. Report will indicate non-standard administration.)**

A.    Format and/or Equipment Accommodations. Test will be administered with the following format and/or equipment accommodation(s):
 N/A      1.   Braille.
          2.   With other accommodations needed due to nature of the disability and nature of the assessment. SDE APPROVAL ONLY.

18.01

page 13 of 14

Case 2:05-cv-00541-MHT-DRB    Document 74    Filed 07/01/2005    Page 43 of 43

## GENERAL FACTORS

| HAS THE IEP TEAM CONSIDERED | YES | NO |
|---|---|---|
| • The strengths of the child? | X | _____ |
| • The concerns of the parents for enhancing the education of the child? | X | _____ |
| • The results of the initial or most recent evaluations of the child? | X | _____ |
| • The results of performance on any State or district-wide assessments, as appropriate? | X | _____ |
| • The need for extended school year services? will receive ESY services for 2002-2003 | X | _____ |

## LEAST RESTRICTIVE ENVIRONMENT

Does this student attend the school (or for a preschool-age student, participate in the environment) he/she would attend if nondisabled? [ X ] Yes [　] No.  If no, justify:

Does this student receive all special education services with nondisabled peers? [　] Yes [ X ] No.  If no, justify (justification may not be solely because of needed modifications in the general curriculum): Due to Gaddies cognitive abilities.

| 6-21 YEARS OF AGE | 3-5 YEARS OF AGE |
|---|---|
| Check One: | 12 [　]  Early Childhood Setting |
| 01 [　]  0 Hours Per Week Outside the Regular Classroom | 13 [　]  Early Childhood Special Education Setting |
| 02 [　]  Less Than 6 Hours Per Week Outside the Regular Classroom | 14 [　]  Home |
| 03 [　]  6-21 Hours Per Week Outside the Regular Classroom | 15 [　]  Part-Time Early Childhood/Part-Time |
| 04 [X]  Over 21 Hours Per Week Outside the Regular Classroom | Early Childhood Special Education Setting |
| 05 [　]  Private School (Parent Placed) | 16 [　]  Residential Facility |
| 06 [　]  Public Day School | 17 [　]  Separate School    N/A |
| 07 [　]  Private Day School | |
| 08 [　]  Home | **COPY OF IEP** |
| 09 [　]  Hospital | Was a copy of the IEP given to parent at IEP meeting? [X] Yes |
| 10 [　]  Public Residential School | [　] No  If no, date copy sent to parent: _____ |
| 11 [　]  Private Residential School | |

## TRANSFER OF RIGHTS
### To be completed at least one year prior to the student's 19th birthday.

I understand that the rights under the Individuals with Disabilities Education Act will transfer to me on my 19th birthday.

N/A

| Student's Signature | Date |
|---|---|

## THE FOLLOWING PEOPLE ATTENDED AND PARTICIPATED IN THE MEETING TO DEVELOP THIS IEP.

| POSITION | DATE | IEP TEAM MEMBERS' SIGNATURES |
|---|---|---|
| PARENT(S) | 4/24/03 | Joranika Corbett |
| PARENT(S) | | |
| LEA REPRESENTATIVE | 4/24/03 | Bessie W. Robinson |
| SPECIAL EDUCATION TEACHER | 4/24/03 | Delta S. King |
| GENERAL EDUCATION TEACHER | 4/24/03 | Lena Cator |
| STUDENT | | |
| CAREER/TECHNICAL EDUCATION REP | | |
| OTHER AGENCY REPRESENTATIVE | 4/24/03 | Alva Tomlin (SOTC) |
| Facilitator | 4-24-03 | Lila Anthony |
| Coordinator | 4-24-03 | Marshall D. Anderson |

## INFORMATION FROM PEOPLE NOT IN ATTENDANCE

| NAME | POSITION |
|---|---|
| _____ | _____ |
| _____ | _____ |