**IN THE UNITED STATES DISTRICT COURT**
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **G.H., a Minor, by his mother** | * | |
| **Juanita Corbett as his next friend** | * | |
| **and Juanita Corbett** | * | |
| **Plaintiffs** | * | |
| **v.** | * | **Case No.2:05CV0541MHTSCS** |
| | * | |
| **ELMORE COUNTY BOARD OF** | * | |
| **EDUCATION;** | * | |
| **MARSHALL ANDERSON, in his** | * | |
| **Individual and official capacity as** | * | |
| **Special education coordinator** | * | |
| **ALABAMA DEPARTMENT OF** | * | |
| **EDUCATION; MABREY** | * | |
| **WHETSTONE in his official capacity** | * | |
| **as State Director of Special Education** | * | |
| **Services; DOE DEFENDANTS 1-5** | * | |
| **Defendants** | * | |

**RESPONSE TO DEFENDANT STATE DEPARTMENT
OF EDUCATION AND MABREY WHETSTONE'S
MOTIONS TO DISMISS**

Come now the plaintiffs  Juanita Corbett and G. H., by and through their attorneys of record and submit the following in response to the State Department of Education and Mabrey Whetstone's Motions to Dismiss. Defendants' motions raise four legal issues as follows:  Failure to exhaust administrative remedies, the liability of  the State Department of Education and Mabrey Whetstone in his official capacity under Section 504 of The Rehabilitation Act and the Americans with Disabilities Act;  the viability of procedural and substantive due process claims under the 14th Amendment and finally  Eleventh Amendment immunity. Each of these issues will be addressed in turn hereinafter after a brief review of the procedural history of this case, the statutory responsibilities of the

parties under the Individuals with Disabilities Act (hereinafter "IDEA") and the legal standard on a motion to dismiss.[1]

**I. Procedural History** The current action follows the filing of two due process cases against the Elmore County Board of Education and the issuance of two orders by a hearing officer appointed by the defendant Alabama State Department of Education. Neither order was appealed, nor is the current matter an appeal although the Department appears to misconstrue the matter as an appeal in its filing.[2]    In fact, this is an enforcement action.

The first order was issued on April 1, 2003 and a second order was issued on February 8, 2005. Both of these were proceedings "Before the State of Alabama Board of Education" and were conducted by a hearing officer appointed by the State Department of Education to act on their behalf to determine whether Elmore County was in compliance with Federal requirements.    The first case resulted in an order requiring the Elmore County Board of Education to provide a community based education program for the plaintiff. The second case resulted from the Elmore County Board of Education's failure to comply with the first order.[3] The second order gave the Elmore County Board specific deadlines to meet in establishing a community based education program for the petitioner. Petitioner's attorneys remained involved in the case thereafter to monitor the implementation of the second order. When the second order was not implemented pursuant to its terms, this enforcement action was filed in federal court.

---

[1] We would note that the Department's motion does not relate to the declaratory judgment portion of the complaint.

[2] In its "Introduction" section of the Motion to Dismiss the Department states "This is an appeal from a Hearing Officer's decision.. ..".  (Page 2-Motion to Dismiss).

[3] The Director of Special Education for the Elmore County Board (Marshall Anderson) stipulated to the hearing officer that Elmore County had not complied with the first order; accordingly the only issue was the remedy which was developed at the Board's request by Dr. Karen Rabren from Auburn University.

**II. Statutory Responsibilities Under IDEA**

At the outset, it should be clearly understood that the statutory responsibility under IDEA to provide a free appropriate public education, is the responsibility of the state education agency. IDEA provides:

(a) In general

A State is eligible for assistance under this subchapter for a fiscal year if the State demonstrates to the satisfaction of the Secretary that the State has in effect policies and procedures to ensure that it meets each of the following conditions:

(1) Free appropriate public education

(**A**) In general  A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school.

20 USC §1412 (1997)[4]. 34 C.F.R. 300.600.[5]  The Fourth Circuit has summarized the process as follows:

. . . Congress established a three-tiered funding, administration, and implementation scheme, under which the state must submit a plan of compliance to the Secretary of Education which provides federal IDEA funds to the state. See 20 U.S.C. §§ 1412-1414. The state is then responsible for administering the funds on the state level, including the distribution of federal funds to local education agencies (LEAs) and the implementation of policies and procedures to ensure that each LEA expends the funds in a manner consistent with the purpose and substantive provisions of IDEA. See id. §§ 1413(a), 1414(b). In order to qualify for IDEA funds, each LEA must apply to the state education agency (SEA)

---

[4] The Act was amended effective July 1, 2005 (IDEIA 2004).  This subsection remains unchanged.
[5] Because of the recent Amendments to IDEA the Federal Regulations are in a "Notice and Comment" period.  This citation is to regulations issued in response to the 1997 Amendments to IDEA.  There do not appear to be any substantive changes to this responsibility under either the new statute or the new proposed regulations.

and provide certain assurances of compliance with IDEA. See id.§ 1414(a). The LEA then provides services directly to children with disabilities using the funds obtained from the SEA. See id.

* * * * * *

The LEA, on the other hand, must apply to the state for funds under IDEA. See 20 U.S.C. § 1414(a). Section 1414(a) provides that in its application, the LEA must, among other things: (1) provide assurances to the state that payments will be used to pay costs directly attributable to programs implementing the provisions of IDEA, see id. § 1414(a)(1); (2) maintain records and furnish information as may be necessary for the state to perform its duties under IDEA, see id. § 1414(a)(3); and (3) provide assurances to the state that the LEA will establish or revise an individualized education program for each child with a disability at the beginning of each school year and review its provisions at least annually, see id. § 1414(a)(5). In the event that an LEA has no program for a free appropriate public education in place or fails to maintain an existing program, § 1414(d)(1) provides a stopgap measure, ensuring the provision of a free appropriate public education:

> Whenever . . . a[n] [LEA] . . . is unable or unwilling to establish and maintain programs of free appropriate public education which meet the requirements established in sub section (a) . . . the [SEA] shall use the payments which would have been available to such [LEA] to provide special education and related services directly to handicapped children residing in the area served by such [LEA].
> Id. § 1414(d)(1).

Thus, IDEA delegates supervisory authority to the SEA, which is responsible for administering funds, setting up policies and procedures to ensure local compliance with IDEA, and filling in for the LEA by providing services directly to students in need where the LEA is either unable or unwilling to establish and maintain programs in compliance with IDEA. The LEA, on the other hand, is responsible for the direct provision of services under IDEA, including the development of an individualized education program (IEP) for each disabled student, the expenditure of IDEA funds to establish programs in compliance with IDEA, and the maintenance of records and the supply of information to the SEA as needed to enable the SEA to function effectively in its supervisory role under IDEA.

Although the SEA's role under IDEA is primarily supervisory, § 1412(6) places the ultimate responsibility for the provision of a free appropriate public education to each student on the SEA.

4

*Gadsby by and through Gadsby v. Grasmick*, 109 F.3d 940, 942-43 (4th Cir. 1997).

Thus, although the State Department of Education may delegate its responsibility to local city and county boards of education; nonetheless, the underlying statutory responsibility lies with the State Department of Education, and not the local education agencies. It remains the State Department's duty to monitor local programs and enforce the requirements of the Act. In fact, in fulfilling its responsibilities to monitor local programs and ensure conformity with state standards, the State Department of Education is directed to terminate funding if local agencies are not in compliance as follows:

> (1) In general
>
> If the State educational agency, after reasonable notice and an opportunity for a hearing, finds that a local educational agency or State agency that has been determined to be eligible under this section is failing to comply with any requirement described in subsection (a) of this section, the State educational agency shall reduce or shall not provide any further payments to the local educational agency or State agency until the State educational agency is satisfied that the local educational agency or State agency, as the case may be, is complying with that requirement.

20 U.S.C. §1413(d)(1).

Moreover, the State is directed to consider due process hearing decisions (like the ones issued in the current matter) in making its determination as to compliance as follows:

> (3) Consideration
>
> In carrying out its responsibilities under paragraph (1), the State educational agency shall consider any decision made in a hearing held under section 1415 of this title that is adverse to the local educational agency or State agency involved in that decision.

20 U.S.C. §1413(d)(3).

It is for this reason that the State Department of Education has a responsibility to either enforce hearing officer orders which find local education agencies in violation of their statutory duties or provide the services themselves.

The State Department of Education appears to acknowledge its duty to monitor hearing officer orders. It does not appear to acknowledge its responsibility to enforce those orders or to serve as a provider of last resort. The 4th Circuit describes that responsibility under IDEA as follows:

> In answering the first question, whether an SEA may be held responsible for the failure to provide a particular child with a free appropriate public education, "[w]e begin, as we must, by examining the statutory language." Murphy, 35 F.3d at 145. As noted above, IDEA's remedial provisions do not explicitly state what governmental entity shall be responsible for remedying a particular violation. Instead, § 1415(e) gives the district court broad authority to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e); see also Burlington, 471 U.S. at 369 (recognizing that this language confers "broad discretion" on district court). However, § 1412(6) states that "[t]he State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out." 20 U.S.C. § 1412(6). This language suggests that, ultimately, it is the SEA's responsibility to ensure that each child within its jurisdiction is provided a free appropriate public education. Therefore, it seems clear that an SEA may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented.

> This conclusion is further supported by § 1414(d)(1), which provides that where an LEA is either unable or unwilling to establish and maintain programs for the provision of a free appropriate public education, "the [SEA] shall use the payments which would have been available to such [LEA] to provide special education and related services directly to handicapped children residing in the area served by such [LEA]." 20 U.S.C. § 1414(d)(1). Under this provision, once an LEA is either unable or unwilling to establish and maintain programs in compliance with IDEA, the SEA is responsible for directly providing the services to disabled children in the area. See Todd D. v. Andrews, 933 F.2d 1576, 1583 (11th Cir. 1991) (holding that SEA must take responsibility for providing free

appropriate public education where disabled student is better served by regional or state facility than local one); Kruelle v. New Castle County Sch. Dist., 642 F.2d 687, 696-98 (3d Cir. 1981) (upholding district court's order requiring SEA to provide student with full-time residential program where LEA failed to provide adequate program). It follows, therefore, that the SEA in such a case could be held liable if it fails to provide those services.

Our conclusion that an SEA may be held liable under IDEA where the state fails to provide a free appropriate public education to a child with a disability is buttressed by the legislative history of § 1412(6). This legislative history indicates that § 1412(6) was included in the statute to "assure a single line of responsibility with regard to the education of handicapped children." S. REP. NO. 94-168, at 24 (1975). Therefore, we hold that the SEA is ultimately responsible for the provision of a free appropriate public education to all of its students and may be held liable for the state's failure to assure compliance with IDEA.

*Gadsby supra* at 952-53..

## III.  Legal Standard on Motion to Dismiss

As this court has stated in its prior opinions, on a motion to dismiss the court will accept the petitioner's allegations as true and construe the complaint liberally in his favor. "The lawsuit may not be dismissed unless the [petitioner] can prove no set of facts supporting the relief requested." *Alabama Department of Rehabilitation Services, vs. U. S. Department of Veterans Affairs*, 165 F. Supp.2d 1262, 1268 (M. D. AL 2001).  The petitioner submits that if the allegations of the complaint are true, that this court certainly has the authority to enforce the decisions of the hearing officer in the two prior cases. Further,  this court is authorized to determine whether the State Department of Education has fulfilled its responsibilities both  to provide the student with a free appropriate public education and to enforce   to its own hearing officer's orders.  Finally, this court is authorized to determine whether department's policies and procedures are adequate to ensure implementation of hearing officer orders—whether that determination is made

under the Individuals with Disabilities Education Act, or pursuant to a claim of a denial of procedural due process.

## IV.  Failure to Exhaust Administrative Remedies

As set forth hereinabove, the petitioner has already obtained two administrative hearing officer orders requiring the Elmore County Board of Education to implement a community-based program for the petitioner.  At the point time in which a Federal Court complaint was finally filed, petitioners' attorneys had determined that the Elmore County Board continued to be in violation of the hearing officer's orders.  Thus, after nearly 2 years of attempting to secure an appropriate program for this student through the administrative process,  a complaint was filed in federal court to enforce these orders.

It is difficult to conceive what further action, either the State Department of Education or the Elmore County Board, would have had the petitioner take to secure a community-based educational program for this student.  Certainly, another due process hearing request would have resulted in nothing other than another order which, in due course, could have been ignored by the Elmore County Board and the State Department of Education.  Would the petitioner at that point have satisfied the exhaustion of administrative remedies requirement?

There are four matters which the Department and Whetstone contend should have been brought up through the administrative process before proceeding to Court.  The Plaintiffs' believe there is no legal basis for the defendants' position.

First,  the defendants claim that plaintiff did not exhaust administrative remedies with respect to their contention that the Department failed to offer a program which conforms to the requirements of the Act as embodied in their hearing officer's decision.

The Department's own Hearing Officer clearly found that the program did not conform with the Act. It was at that point in time that the Department should have fulfilled its duty to either  provide such a program or ensure that it was provided. The Department is not specific as to what further action Plaintiff should have taken. If they are suggesting that they are required to be joined as respondents in the administrative process before they are required to act,  the Plaintiffs see no statutory basis for that requirement. Moreover,  the hearing officers are not empowered to  look at issues other than identification, eligibility and whether or not a free appropriate public education is being provided. 20 U.S.C. §1415. There is no provision in the statute allowing review by a hearing officer of these types of structural-administrative issues (i.e. whether the Department is fulfilling its statutory responsibilities under section §1413 of the Act to oversee local programs.[6] The State's duty is clear in these cases:

> As defined by the IDEA, the state's role amounts to more than creating and publishing some procedures and then waiting for the phone to ring. The IDEA imposes on the state an overarching responsibility to ensure that the rights created by the statute are protected, regardless of the actions of local school districts. *Honig v. Doe*, 484 U.S. 305 (1988); *Kruelle v. New Castle County School Dist*., 642 F.2d 687, 696-97 (3d Cir.1981); *Lester H. v. Gilhool*, C.A. No. 86-6852, slip op. (E.D. Pa. Nov. 9, 1989), aff'd, 916 F.2d 865 (3d Cir.1990), cert. denied, 111 S.Ct. 1317 (1991); *Hendricks v. Gilhool*, 709 F.Supp. 1362, 1367-69 (E.D.Pa.1989). The state must assure that in fact the requirements of the IDEA are being fulfilled. 20 U.S.C. § 1412(6); 34 C.F.R. § 300.600.

> Accordingly, with regard to the state's liability in this action, the fact that local agencies are not performing up to par or that parents are not fulfilling their duties becomes **irrelevant**. It is the state's obligation to ensure that the systems it put in place are running properly and that if they are not, to correct them. This is the crux of the state's liability in this matter. (At IDELR 1104)

*Cordero v. Pennsylvania Dept. of Educ*. 795 F.Supp. 1352, 1362  (M.D. PA 1992)

---

[6] Regarding hearing officer jurisdictional limitations, see e.g. *Wyner ex rel Wyner v. Manhattan Beach Unified*, 223 F.3d 1026,1029 (9th Cir. 2000)("Failure to comply with an order emanating from a prior due process hearing is not within the specified jurisdiction").

The other three issues identified by the defendants as being subject to the exhaustion requirement (development and effectuation of policies to ensure compliance, the failure of the Department and Whetstone to monitor and oversee compliance) are subject to the same response. Department hearing officers are not authorized by statute or regulation to oversee policies and procedures of the Department. The undersigned are unaware of any authority that the hearing officers have to order state officials to implement or enforce their prior orders. Moreover, there would be some underlying conflict of interest for hearing officers appointed by the State Department of Education to review that department's own conduct, and attempt to require it to take some action.

In *Porter v. Board of Trustees of Manhattan Beach Unified School District*, 307 F.3d 1064 (9th Cir. 2002) the Ninth Circuit reversed a district court's dismissal of an enforcement action against the local district and the state education agency. In that case the student had obtained a hearing officer order regarding compensatory services. The order was never implemented and an enforcement action was filed in district court. Upon defendant's motion to dismiss for failure to exhaust administrative remedies (in this case California's "Complaint Resolution Process") the district court dismissed the complaint without prejudice. The Ninth Circuit reversed and remanded the case for further proceedings. On December 21, 2004, U. S. District Judge Feess issued an order granting summary judgment in the plaintiff's favor on their claim that the California Department of Education failed to exercise its supervisory responsibility.[7] In *Porter*, the State Department had sent out a follow up letter to the district asking for evidence of compliance with the hearing officer's order. The District forwarded an IEP which the

---

[7] This rather length opinion is available at the following website: www.specialedlaw.org. The Page is captioned "Federal Judge Approves Record $6.7 million Settlement for Wyner & Tiffany client and is under "Related Documents"-"Summary Judgment Decision."

Department accepted.    Upon further complaints from the parents regarding non-compliance,    the State Department accepted further written documentation from the District as satisfying IDEA's requirements.    The Court described this procedure as follows:

> By requiring nothing more than delivery of a new IEP document ("paper compliance"), the [State Department] allowed the District to create the impression of compliance without actually meeting [the student's] educational needs as required under the IDEA. ….[U]nder the terms of the [State Department's] order, compliance with any of them could be demonstrated by the District by simply sending a document to the [Department] without any proof of actual delivery of the services. . . [T]he District  reported the development of an IEP without actually providing [the student] with services.  For some period of time, the [State Department] accepted the report as evidence that the District was in compliance with its legal obligations under state and federal law when the truth was quite the opposite.

> * * *

> Because the [State Department] failed to require logs or any other form of evidence that such services were actually being provided, it had no way of verifying whether the District was complaint with [State Department] orders and state and federal law. Where the very issue before the [State Department] was the District's sustained noncompliance with the requirements of the IDEA and prior orders for corrective action, the [Department's] willingness to accept the unsubstantiated word of the recalcitrant district invited further neglect of the District's legal obligations.

*Porter v. Board of Trusteees of Manhattan Beach Unified School District.,*

Case NO. CV 00-08402 GAF (USDC, C. D. Cal. 2005) (Unpublished opinion

on motion for summary Judgment- Pages 53-54).[8]

The similarities between *Porter, supra* and the current action are striking—

although in the current case there were two due process orders not simply one.  In the

---

[8] On August 18, 2005 Judge Feess approved a $6.7 million settlement of this case to pay for special education services for this student who had not been appropriately educated for longer than five years.  The Court transferred control over the student's education to a special master.

current case the State Department has submitted in the record to this Court a document styled "State Department of Education's Letter to Elmore County Special Education Coordinator Requesting Documentation of Their Implementation of the 4/7/2003 Order from Due Process Hearing Officer." (Administrative Record page 27 of 43). In response to that letter the system submitted an unimplemented revised IEP. The Department apparently accepted that document as sufficient.

Thereafter, following the second due process decision and aware that the District had failed to implement the first order, the Department sent the identical letter which is in the record as "State Department of Education's Letter to Elmore County Special Education Coordinator Requesting Documentation of Their Implementation of the 2/9/2005 Order from Due Process Hearing Officer."(Administrative Record page 16 of 39). Once again, Elmore County sent documentation regarding their plans. The response again outlines what they are planning on doing. It does not document that the order has been implemented. Nor did the Department apparently follow-up or actually demand documentation of implementation. Even now, it appears from the Department's answer to Plaintiff's complaint that they do not know whether Elmore County has implemented the second hearing officer's orders. (Defendant's Answer at paragraph 21 ). It is this failure of enforcement that necessitates this action and further administrative proceedings can only be described as futile at this point.

Based on these facts, even if the Court were to determine that administrative remedies have not been exhausted, it would appear that this case would fall within the futility exception to that requirement. See, *Smith vs. Robinson*, 468 US 992, 104 S.Ct.

3457, 82 L.Ed. 2nd (1984).  *N. B. by D. G. vs. Alachua County School Board.,* 84 F. 3d 1376 (11th Circuit 1996).

The petitioner has already tried the administrative process on two occasions with respect to the identical issue.  Taking the allegations of the Petitioner's complaint as true, as the Court is required to do on Motion to Dismiss,  neither the Elmore County Board nor the State Department of Education have implemented those orders.  Meanwhile, the petitioner has already lost two years of educational time and would simply lose additional time by being required to participate in further administrative proceedings.

If not futile, then clearly administrative remedies are inadequate thus forming a further exception to the exhaustion requirements.  See *Honig v. Doe*, 108 S.Ct.  592, 484 U.S. 305, 98 L. Ed.2d 686 (1988). Administrative remedies are inadequate (regardless of how many orders  are issued)  because there appears to be no  enforcement of orders issued by the hearing officers by the State Department of Education.  That is, the State Department's  enforcement activities are insufficient  to fulfill their obligations under IDEA and further result in a denial of procedural and substantive due process rights of the petitioner.

Petitioners recognize that an enforcement action is an extraordinary remedy.  In older cases where it has been addressed, recognizing that it does not fit within the statutory administrative scheme,  the courts have implied a cause of action under 42 USC ¶983.  See, *Robinson vs. Pinderhughes,* 810 F.2d  1270 (4th Cir. 1987); *Jeremy H.  vs. Mount Lebanon School District,* 95 F.3d 272 (3rd Cir.  1996). Most recently, the First Circuit has acknowledged the existence of enforcement jurisdiction in *Nieves-Marquez*

*vs. Commonwealth of Puerto Rico*, 353 F.3d 108, 115 (1st Cir. 2003). In that case, the first circuit Court of Appeals concluded.

> ". . . .Congress could not have intended to leave plaintiffs without an IDEA statutory remedy when they succeed before the hearing officer and the school system does not appeal the administrative decision, but simply fails to fulfill a continuing obligation to provide services. . . Congress could not have intended for a school system be in a better position under IDEA when it refuses to comply with a final administrative order and its continuing obligations than when it exercises its statutory right to appeal from the order. . . . It cannot be that a court is powerless under IDEA to issue injunctive relief when the school system, neither appeals from nor complies with a valid administrative order and its continuing obligations. That would open a gaping hole in IDEA's coverage. It would create incentives or school systems to drag out the administrative process, not to appeal administrative orders, not to announce their intentions to refuse to comply with those orders, and generally not to comply.

In sum, the Petitioner submits that the exhaustion argument is without merit either because the plaintiff has clearly exhausted remedies, because the issues relating to the Department are not subject to the administrative process or in the alternative that further "exhaustion" would be futile.


## V. Liability of Mabrey Whetstone in his Official Capacity and the State Department of Education under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act

**A. Liability of Mabrey Whetstone.** Defendant suggests in brief that only entities can be sued under the Rehabilitation Act and the Americans with Disabilities Act. Dr. Whetstone has been sued in his official capacity under both Acts seeking declaratory and injunctive relief. The complaint states that Dr. Whetstone, who is the State Director of Special Education, (and therefore responsible for the oversight and administration of

all Special Education programs) has failed to ensure that due process hearing orders are

implemented  (Paragraph 24) and has failed to monitor and oversee the implementation

of hearing officer's decisions and/or to direct that the State Department provide those

services itself. (Pargraph 33).

The Eleventh Circuit in  *Miller v. King*, 384 F.3d 1248  (11th Cir. 2004) held,

> [W]e join our sister circuits in holding that the Eleventh Amendment
> does not bar ADA suits under Title II for prospective injunctive relief
> **against state officials in their official capacities.** *McCarty v. Hawkins,*
> 381 F.3d 407, 417 (2004 W.L. 1789945 at 7)(5th Cir. August 11, 2004);
> *Chaffin v. Kansas State Fair Bd.,* 385 F.3d 850, 866-67 (10th Cir. 2003);
> *Henrietta D. v. Bloomberg,* 331 F.3d 261,288 (2nd Cir. 2003). [Emphasis
> added].

*Id* at 1264.   The Eleventh Circuit adopted the position of the second Circuit  which

explained it's rationale for holding a State officer liable as a "public entity" subject to

liability under the ADA as follows:

> We also cannot embrace the state defendant's statutory claim that an
> individual sued in his or her official capacity under the doctrine of *Ex
> parte Young* is not a "public entity" subject to liability under the ADA, 42
> U.S.C. §12132.  The real party in interest in an official capacity suit is the
> government entity.  *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S. Ct. 358,
> 116 L.Ed.2d 301(1991). As a result, it is irrelevant whether the ADA
> would impose individual liability on the officer sued; since the suit is in
> effect against the "public entity," it falls within the express authorization
> of the ADA.  *See Bruggeman ex rel. Bruggeman v. Blagojevich,* 324 F.3d
> 906, 912-13 (7th Cir. 2003); *Carten v. Kent State Univ.*, 282 F.3d 391,
> 396-97 (6th Cir. 2002) (stating that state officials "*are* public entities
> insofar as they represent the state when acting in their official capacity").

*Id* at 288.

The Court in *Henrietta D. supra*  went on to address liability of a public official

under Section 504 of the Rehabilitation Act as follows:

> Neither §504 nor Title II displays any intent by Congress to bar a
> suit against state officials in their official capacities for injunctive relief,
> nor does either create a remedial scheme so elaborate that it could be

> thought to preclude relief under *Ex parte Young. See Koslow,* 302 F.3d at
> 179 (citing *Gibson v. Ark Dep't of Corr.,* 265 F.3d 718, 720-22 (8th Cir.
> 2001).

*Id* at 289.    Clearly, the Defendant's position is without merit as to claims for declaratory

and  injunctive relief and Dr. Whetstone is an appropriate party defendant.

### B. Liability of the Department under Section 504 and the ADA

Defendant's motion to dismiss is wholly without merit as it relates to the

Department.  There appears to be an acknowledgement that the Department is a proper

party if plaintiff can show "intentional"  conduct or "deliberate indifference."  Plaintiffs

complaint alleges both.    Specifically,  it was the Department's duty to establish and

implement procedures and policies to ensure FAPE to the petitioner.  Their failure to do

so after two hearing officer decisions over a two year period[9] rises to the level of

deliberate indifference. Clearly it does so under the Ninth Circuit standard  cited  in

Defendants' brief –i.e. "knowledge  that  a  harm  to  a  federally  protected  right  is

substantially likely" and a "failure to act upon that knowledge."    *Duvall v. County of*

*Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001.)    Defendant's conclusory statement that, "it

is clear the Department, nor its agents, acted intentionally or with deliberate indifference"

does not make it so!   Taking the allegations in the complaint as true,  plaintiffs maintain

that they will be able to show knowledge and a failure to act and therefore Defendants'

motion to dismiss is due to be denied.

---

[9] Plaintiffs complaint at paragraphs 35.

**VI.  Procedural and Substantive Due Process Claims under the 14th
Amendment**

As stated hereinabove,  the Courts have found different jurisdictional bases for
enforcement actions such as this one.  Recognizing that IDEA does not provide a specific
administrative remedy to enforce hearing officer orders,  earlier cases relied on Section
1983  and the denial of procedural and/or substantive due process that arises where orders
are not enforced.  In *Robinson, supra*  the Fourth Circuit permitted the plaintiffs to file a
§1983 action to enforce an administrative order under the Education of the Handicapped
Act ("EHA") 20 U.S.C. § 1400 et seq. (1987). [Predecessor Statute to IDEA] In that case,
after failing to obtain special education services,   the plaintiffs requested a due process
hearing. A hearing officer rendered a decision in the plaintiffs' favor. The city  refused to
comply with the administrative order. Finding that the  EHA contained no provision for
the enforcement of the order, the Court opined that   the plaintiffs were "left with a
favorable final administrative decision which they [were] powerless to enforce upon the
city." *Id.* at 1273.

Having concluded that the EHA lacked a specific  enforcement mechanism, the Court
authorized the plaintiffs to secure the city's compliance with the order by means of a civil
rights action under § 1983. The Court found that  the EHA was available to the child to
have his substantive rights established but   was not available to him to  have them
enforced.  Therefore, the plaintiffs were permitted to pursue their remedy under § 1983
for deprivation of a right secured by the laws of the United States-- specifically the

17

administrative orders issued pursuant to IDEA created a substantive right which was enforceable in a 1983 action.

Similarly in *Jeremy H. vs. Mount Lebanon School District*, 95 F.3d 272 (3rd Cir. 1996) the Third Circuit found Section 1983 to form a basis for enforcement of administrative orders rather than some implicit authority under IDEA. This case also involved a hearing officer's order relating to evaluations, development of an IEP and compensatory services. Finding no specific jurisdictional bases for an enforcement action under IDEA the court opined:

> In the present case, whether or not an IDEA decision of a a state hearing officer or appellate body is enforceable under IDEA directly, such a decision would seem to be enforceable under section 1983. The Fourth Circuit found in *Robinson v. Pinderhughes*, 810 F.2d 1270 (4th Cir. 1987), that a section 1983 action could be brought to enforce the decision of an IDEA administrative proceeding. WE agree with the reasoning of *Pinderhughes*, and note that the Supreme Court's present methodology for ascertaining whether a section 1983 action is available to redress a violation of federal law produces the same result.

*Id* at 279. Thus, if the Court finds that there is an implied right of action under IDEA it would appear that the claims under 1983 as to the provision of FAPE would be duplicative—at least to the extent that the petitioner is seeking enforcement of the prior orders. If the Court does not find a jurisdictional basis in IDEA for enforcement of these orders, then the claims under 1983 would be vital—particularly since a finding that IDEA did not present a remedy would indicate that a deprivation of a substantive property right (i.e. FAPE) is taking place without constitutionally adequate pre-or post-deprivation procedural due process. *Logan v. Zimmerman Brush Co.* 455 U.S.. 422 (1982).

Peitioner has also alleged substantive due process claims.  That is, that the substance of the Department's policies cause a loss of a property right (i.e. FAPE).  Although there are other stated policies on the books,  the facts  "on the ground" in this case are that the Department assigned a hearing officer,  received the hearing officer's orders,   sent out a letter asking if the school board complied with the orders and then conducts no further investigation as to what really happened.[10]   Thus, the substance of those policies results in a deprivation of property which should be addressed either under IDEA or through a §1983 action.

## VII Eleventh Amendment Immunity

Defendants' claim that Eleventh Amendment bars suits against the Department.  The basis for that contention is somewhat vague.  Defendants are well aware that a state may waive immunity be accepting Federal funding.   As to IDEA claims,  the State waives sovereign immunity be accepting IDEA funding. 20 U. S. C. §1403(a).     The same result is reached with respect to claims under the Rehabilitation Act. The Eleventh Circuit has stated:

> Section 2000d-7 unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act. By continuing to accept federal funds, the state agencies have waived their immunity.

---

[10] These follow up inquiry letters and responses from the local education agency are in the administrative record at the following locations.

*Garrett v. University of Alabama at Birmingham*, 344 F.3d 1288, 1293 (11th Cir. 2003).

As to the ADA, the Eleventh Circuit has also found an intent to abrogate Eleventh Amendment Immunity:

> The ADA plainly states that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State Court . . . for a violation of the ADA. 42 U.S.C.§12202.

*Miller v. King* at 1268. Admittedly in *Miller* The Court found that on the claims presented in *Miller* there was no waiver as to money damages.[11] This does not preclude prospective declaratory and injunctive relief nor does it appear to preclude the type of compensatory relief sought by the Petitioner—which is nothing other than to fulfill their obligations under the Act.

**Summary:** In sum, defendant's motion to dismiss is without merit and due to be denied. Clearly there is a jurisdictional basis either under IDEA or Section 1983 to hear the enforcement action against the State Department of Education and Dr. Whetstone. Moreover, there is no immunity from suit for prospective relief and declaratory relief. Finally the 11th Amendment arguments are wholly without merit as to the Rehabilitation Act and IDEA.

Respectfully submitted on this the 26th day of August, 2005.

---

[11] The "damages' sought in this action are in essence costs to the petitioner arising out of the defendant's failure to provide FAPE. They are not the primary focus of the case but do include transportation costs, lost opportunity costs, educational and legal costs, financing for future education and occupational and functional training for the petitioner.

                      **S**/<u>Susan Shirock DePaola</u>

**Susan Shirock DePaola**
**1726 West Second Street~Suite B**
**Montgomery, Alabama  36106**
**334-262-1600**
**ASB:  7431-L75S**


                      **S/** <u>Sharon Gilbert Yates</u>

**Sharon Gilbert Yates**
**454 South Decatur Street**
**Montgomery, Alabama  36104**
**334-264-7098**
**ASB:  3652-A64S**


## CERTIFICATE OF SERVICE


       I hereby certify that a copy of the foregoing has been served upon the following by Electronic Case Filing or by placing the same in the U.S. Mail first class, postage prepaid and properly addressed as follows on this the 26th day of July, 2005.


Reginald L. Sorrells
Larry E. Craven
Darnell Coley
State Department of Education
Office of General Counsel
5103 Gordon Persons Building
Montgomery, AL  36130


James R. Seale
Erika Perrone Tatum
PO Box 116
Montgomery, AL 36101-0116

                              s/Susan Shirock DePaola